**Alton PLATT, Lauren Wright, Carlene Smith, Kenneth Hurt and Jihad Muhammad, on their own behalf and on behalf of all others similarly situated, Appellants–Plaintiffs,**

**v.**

**The STATE of Indiana, Evan Bayh, individually and in his capacity as Governor of Indiana, The Consolidated City of Indianapolis and County of Marion, Stephen Goldsmith, individually and in his capacity as Mayor of the Consolidated**

---

City of Indianapolis and County of Marion, and the City–County Council of the Consolidated City of Indianapolis and County of Marion, individually, and in their capacities as members of the City–County Council of the Consolidated City of Indianapolis and County of Marion, The Municipal Court of Marion County, The Superior Court of Marion County, The Marion County Public Defender Agency, and The Marion County Public Defender Board, Appellees–Defendants.

No. 49A05–9411–CV–432.

Court of Appeals of Indiana.

April 16, 1996.

Stephen Laudig, Laudig & George, Indianapolis, for Appellant.

Dale Simmons, City Legal Department, Indianapolis, for all County Defendants.

Pamela Carter, Attorney General, Anthony W. Overholt, Deputy Attorney General, Indianapolis, for State Defendants.

## OPINION

STATON, Judge.

Alton Platt, Lauren Wright, Carlene Smith, Kenneth Hurt, and Jihad Muhamad, on their own behalf and on behalf of all others similarly situated,[1] appeal the order of the trial court dismissing their second amended complaint in this action. Platt raises four issues for appellate review, which we reorder and restate as follows:

I. Whether the trial court properly applied the law of the case doctrine in dismissing Platt's claims against defendants.

II. Whether the system of providing legal defense to indigent criminal defendants in Marion County is constitutionally inadequate.

III. Whether the system of providing legal defense to indigent criminal defendants is racially discriminatory and thus violates the Equal Protection Clause.

IV. Whether the ordinance creating the Marion County Public Defender Board and the Marion County Public Defender Agency violates the separation of powers doctrine.

We affirm.

The facts most favorable to Platt reveal that on April 10, 1992, Platt filed a lawsuit challenging the constitutionality of the Marion County Public Defender System and seeking mandatory injunctive relief. The original complaint named as defendants the State of Indiana, Governor Evan Bayh, the City of Indianapolis and Marion County, Indianapolis Mayor Stephen Goldsmith, and the

City–County Council. On November 6, 1992, the trial court dismissed the complaint, concluding that the named defendants did not have "the requisite power, authority, jurisdiction, ability or legal duty" to provide the relief sought by Platt. Supp. Record, p. 9. This dismissal was not appealed.

Thereafter, Platt twice amended the complaint to add additional defendants, so the case at bar also includes the Marion County Superior and Municipal Courts, the Marion County Public Defender Agency, and the Marion County Public Defender Council. The second amended complaint was in fourteen counts, but stated in essence three constitutional claims: (1) that indigent criminal defendants in Marion County receive constitutionally inadequate legal representation; (2) that the public defender system in Marion County is racially discriminatory, violating the Equal Protection Clause of the Fourteenth Amendment; and (3) that Marion County Public Ordinance Number 9, which created the Public Defender Agency and the Public Defender Board, violates constitutionally mandated separation of powers.

On July 8, 1994, the trial court dismissed the second amended complaint on the ground that the law of the case doctrine barred Platt's original claims against the original defendants, due to the previous dismissal of the first complaint. The trial court further concluded that as to all but Count Fourteen of the second amended complaint, Platt stated no claim for relief. With regard to Count Fourteen, the court ordered Platt to file an amended complaint within thirty days. Platt failed to do so and on April 4, 1995, the trial court dismissed Count Fourteen, thus determining all issues in this matter. *See* Second Supp. Record, p. 3. Platt appeals the dismissal order.

■ In determining whether a complaint should be dismissed for failure to state a claim, facts alleged in the complaint must be taken as true. Dismissal is appropriate only where it appears that under no set of facts could plaintiffs be granted relief. *Morton–*

---

1. To avoid confusion, we will refer to the class of plaintiffs collectively as "Platt." Class certification in this action was never addressed by the trial court.

*Finney v. Gilbert,* 646 N.E.2d 1387, 1388 (Ind.Ct.App.1995), *trans. denied.*

## I.

### *Law of the Case*

█ We must first address the issue of whether the law of the case doctrine was properly applied to bar the original claims against the original defendants that were dismissed by court order in 1992. The law of the case doctrine stands for the proposition that:

> [F]acts established at one stage of a proceeding, which were part of an issue on which judgment was entered and appeal taken, are unalterably and finally established as part of the law of the case and may not be relitigated at a subsequent stage.

*Otte v. Otte,* 655 N.E.2d 76, 83 (Ind.Ct.App. 1995), *reh. denied, trans. pending* (quoting *Landowners v. City of Fort Wayne,* 622 N.E.2d 548, 549 (Ind.Ct.App.1993), *reh. denied* ). The application of this doctrine is discretionary, and despite its availability, courts retain the power to revisit their prior decisions or those of a coordinate court in any circumstance, "although as a rule courts should be loathe to do so in the absence of extraordinary circumstances." *Otte, supra,* at 83–84 (citing *Landowners, supra,* at 549).

█ In this case, the trial court dismissed the original claims based on Ind.Trial Rule 12(B)(6), concluding that Platt's complaint failed to state a claim upon which relief could be granted. After Platt twice amended his complaint, the trial court dismissed the original claims as to the original defendants, concluding that the prior dismissal constituted the law of the case, and barred the similar claims in the second amended complaint.

Whether the law of the case doctrine is applicable to allegations in an amended complaint filed after a T.R. 12(B)(6) dismissal has never been addressed by the courts of this jurisdiction. However, this issue can be resolved by examining the effect of a dismissal pursuant to T.R. 12(B)(6). T.R. 12(B)(6) provides that a defendant may file a motion to dismiss for failure to state a claim upon which relief can be granted. The rule further provides in relevant part that "[w]hen a motion to dismiss is sustained for failure to state a claim under subdivision (B)(6) of this rule the pleading may be amended once as of right ..." T.R. 12(B).

When a party exercises his automatic right to amend pursuant to this rule, the amended pleading replaces the original pleading for all purposes, and all rights to appeal the original dismissal are lost. *Anderson v. Anderson,* 399 N.E.2d 391, 406, n. 30 (Ind.Ct.App.1979) (citing *McKenna v. Turpin,* 128 Ind.App. 636, 151 N.E.2d 303 (1958)). Accordingly, a T.R. 12(B)(6) dismissal is without prejudice, since the complaining party remains able to file an amended complaint within the parameters of the rule. A T.R. 12(B)(6) dismissal becomes an adjudication on the merits only after the complaining party opts to appeal the order instead of filing an amended complaint. *See Browning v. Walters,* 616 N.E.2d 1040, 1044 (Ind.Ct.App.1993) *modified on other grounds,* 620 N.E.2d 28 (by electing to appeal a dismissal order instead of filing an amended complaint, the plaintiff rendered the trial court's dismissal order an adjudication on the merits).

With this in mind, we now consider the trial court's application of the law of the case doctrine to the circumstances at bar. The law of the case doctrine requires the presence of "facts established at one stage of a proceeding, which were part of an issue on which judgment was entered and appeal taken ..." *Otte, supra,* at 83. Because a T.R. 12(B)(6) dismissal order is not final and appealable once an amended complaint is filed, it involves neither facts nor issues on which judgment was entered or appeal taken. Therefore, such order should not have the preclusive effect that the application of the law of the case doctrine would give it. As a result, the trial court erred when it relied upon the law of the case doctrine as a basis for dismissing Counts I through XII of Platt's second amended complaint.

Nevertheless, in the interest of judicial economy, rather than remanding this case based upon the trial court's erroneous application of the law of the case to the first twelve counts of Platt's complaint, we will address the merits of the first twelve counts

of the complaint as well as the merits of the dismissal of Counts XIII and XIV as these issues are fully briefed.

## II.

### Constitutionally Inadequate Defense

Platt contends that the trial court erred in denying his petition to enjoin the Marion County public defender system because it is inadequate under both the United States and Indiana Constitutions.

■ The granting or refusing of injunctive relief is a matter within the sound discretion of the trial court. *Oakes v. Hattabaugh,* 631 N.E.2d 949, 953 (Ind.Ct.App. 1994), *reh. denied, trans. denied.* A mandatory or prohibitory injunction is an extraordinary equitable remedy which should be granted with caution. *Id.* The plaintiff carries the burden of demonstrating injury which is certain and irreparable if the injunction is denied. *Campbell v. Spade,* 617 N.E.2d 580, 583 (Ind.Ct.App.1993). In making its decision, the trial court must weigh whether the plaintiff has an adequate remedy at law and the court must consider whether an injunction is in the public interest. *Id.* The trial court's grant or denial of injunctive relief will not be overturned unless it is arbitrary or amounts to an abuse of discretion. *Id.*

Platt argues that the Marion County public defender system is constitutionally inadequate under the Fifth (right to due process of law), Sixth (right to assistance of counsel), and Eighth Amendments (right to reasonable bail) to the United States Constitution and Art. I, §§ 12 (right to due course of law), 13 (right to counsel), 16 (right to nonexcessive bail), 17 (right to bail), and 18 (penal code founded on reformation not vindictive justice)

of the Indiana Constitution and therefore, should be enjoined.

The focal constitutional claim Platt raises is that the existing public defender system violates his fundamental right to effective pretrial assistance of counsel under the Sixth Amendment to the United States Constitution[2] and Art I, § 13 of the Indiana Constitution.[3] Platt raises his claims under the Fifth Amendment, the Eighth Amendment, and the due process clause of the Fourteenth Amendment in the context of the Sixth Amendment right to effective assistance of counsel, so we need not address each of these provisions individually. Platt addresses his arguments under the provisions of the Indiana Constitution in the same manner. Thus, our review of Platt's ineffective assistance of counsel claim under the Sixth Amendment encompasses all the constitutional arguments he raises. However, we address Platt's claim under the Equal Protection Clause of the Fourteenth Amendment separately. *See* Issue III, *infra.*

Platt contends that the system for providing legal counsel for indigents in Marion County lacks sufficient funds for pretrial investigation and preparation which inherently causes ineffective assistance of counsel at trial. Platt argues that this insufficiency cannot be cured by an appellate claim of ineffective assistance of counsel in light of the heavy burden of error the appellant must show under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[4]

■ In *Strickland,* the United States Supreme Court created a standard for assessing when a defendant has been deprived his right to effective assistance of counsel under the Sixth Amendment. There, the Court noted, "The benchmark for judging any claim

---

2. The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."

3. Art. 1, § 13 provides, "In all criminal prosecutions, the accused shall have the right . . . to be heard by himself and counsel."

4. Because the Indiana Supreme Court has applied the test set forth by the United States Su-

preme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), our analysis under *Strickland* is applicable to both his Sixth Amendment and Art. I, § 13 claims. *See Bellmore v. State,* 602 N.E.2d 111, 123 (Ind.1992), *reh. denied; Resnover v. State,* 507 N.E.2d 1382, 1385 (Ind.1987), *cert. denied,* 484 U.S. 1036, 108 S.Ct. 762, 98 L.Ed.2d 779 (1988).

of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland, supra,* at 686, 104 S.Ct. at 2064. A reversal for ineffective assistance of counsel is required when the defendant has shown: (1) that counsel's performance was deficient, i.e., that counsel made errors so serious that counsel was not functioning as "counsel"; and (2) that this deficient performance prejudiced the defense insofar as counsel's errors were so serious as to deprive the defendant of a fair trial. *Id.* at 687, 104 S.Ct. at 2064.

 The right to effective assistance of counsel under the Sixth Amendment "is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657 (1984). "Absent some effect of [the] challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated." *Id.* Thus, any violation of the Sixth Amendment must be reviewed in the context of the whole trial process, as the determination of the effectiveness of counsel is whether the defendant had the assistance necessary to justify reliance on the outcome of the proceeding. *Strickland, supra,* at 692, 104 S.Ct. at 2067. A court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. *Id.* at 690, 104 S.Ct. at 2065–66.

 Here, Platt seeks to enjoin the Marion County public defender system because it effectively denies indigents the effective assistance of counsel. However, a violation of a Sixth Amendment right will arise only after a defendant has shown he was prejudiced by an unfair trial. This prejudice is essential to a viable Sixth Amendment claim and will exhibit itself only upon a showing that the outcome of the proceeding was unreliable. *Id.* Accordingly, the claims presented here are not reviewable under the Sixth Amendment as we have no proceeding and outcome from which to base our analysis.[5]

 Moreover, a court of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief. *O'Shea v. Littleton,* 414 U.S. 488, 499, 94 S.Ct. 669, 677–78, 38 L.Ed.2d 674 (1974) (quoting *Younger v. Harris,* 401 U.S. 37, 43–44, 91 S.Ct. 746, 750–51, 27 L.Ed.2d 669 (1971)). In assessing a claim in federal court for equitable relief for constitutional violations arising from state law, the Court instructed lower courts to exercise "restraint against the issuance of injunctions against state officers engaged in the administration of the State's criminal laws in the absence of a showing of irreparable injury which is 'both great and immediate.'" *Id.* (quoting *Younger, supra,* at 46, 91 S.Ct. at 751–52).

 Here, Platt has an adequate remedy at law should he be adjudged guilty of the crimes charged and not provided the effective assistance of counsel. First, any defendant may take an appeal to the Indiana Supreme Court or the Court of Appeals as a matter of right, from any judgment in a criminal action against him in the manner prescribed by law. *Evolga v. State,* 519 N.E.2d 532, 533 (Ind.1988), *reh. denied;* IND. CODE § 35–38–4–1 (1993); and *see* Art. 7, § 8 of the Ind. Constitution. In that appeal, the court's decision or intermediate order made in the progress of the case may be reviewed. *Id.* Prior to doing so, Platt may also file a motion to correct error within thirty days of

5. The Minnesota Supreme Court recently addressed an analogous claim. *See Kennedy v. Carlson,* 544 N.W.2d 1 (Minn.1996). There, the court determined that the district court erred in granting a public defender's motion for summary judgment on the ground that the public defender services in his district were underfunded and thereby, failed to render effective assistance of counsel in accordance with the Sixth Amendment. Reversing the district court's judgment, the Minnesota Supreme Court indicated that the public defender's claim was too speculative and hypothetical in that the public defender had failed to present any evidence that his clients were denied the effective assistance of counsel. *Id.* at 6–8. Because the public defender failed to show any "injury in fact", the court rejected his request for judicial intervention. *Id.* at 8.

sentencing in accordance with Ind.R.Crim.P. 16.

In addition, Platt may file a petition for post-conviction relief under Indiana's post-conviction rules. *See* Ind. Post–Conviction Rule 1. Platt may then petition for a writ of habeas corpus relief to the appropriate federal district court. *See* 28 U.S.C.A. § 2254 (West 1994). Finally, Platt can file a writ of mandamus, requiring the Marion County courts to provide for the appointment of a competent public defender as the trial court has a duty to do so under IND.CODE §§ 33–9–11–1 through 33–9–11–5 (1993). *See State ex rel. Brumfield v. Perry Circuit Court,* 426 N.E.2d 692 (Ind.1981). *See also State v. Allen Circuit Court,* 238 Ind. 571, 153 N.E.2d 914 (1958) (trial court mandated to appoint pauper counsel to represent defendant and furnish transcript at public expense as required by statute).

Because his claim under the Sixth Amendment is not yet ripe and because he has several adequate remedies available to him at law and will not suffer irreparable harm, Platt's petition for equitable relief is inappropriate.[6] *Campbell, supra,* at 583.

### III.

### *Equal Protection*

Platt also contends that the trial court erred in dismissing Count XIII of his complaint in which he alleged that the Marion County Public Defender system is racially discriminatory, violating the Equal Protection Clause of the Fourteenth Amendment.[7]

■ In assessing a claim under the Equal Protection Clause, our first inquiry involves the applicable level of scrutiny. Laws which involve a suspect classification, like race or alienage, and those that burden the exercise of fundamental rights, like reproduction or expression, receive the strictest scrutiny. *Dept. of Envtl. Mgt. v. Chemical Waste Mgt., Inc.,* 643 N.E.2d 331, 337 (Ind.1994). In order to survive strict scrutiny, a state action must be a necessary means to a compelling governmental purpose and be narrowly tailored to that purpose. *Id.*

■ Platt argues that "[t]he evidence is so overwhelming of intentional neglect and underfunding of public defense that it is reasonable to conclude that the Defendants *intended* that poor people, generally, and African–Americans, in particular, charged with crimes, be provided inadequate assistance of counsel." Appellant's Br. at 45, (emphasis in original).

Platt indicates that because at least 60% of the persons represented by public defenders in Marion County are African–Americans and only 25% of the population of Marion County is African–American, the clear intent of the County's public defender system is for African–Americans to receive ineffective assistance of counsel.

Platt cites *Palmer v. Thompson,* 403 U.S. 217, 91 S.Ct. 1940, 29 L.Ed.2d 438 (1971) in support of his theory that this disparate impact is sufficient to show a violation of the Equal Protection Clause. In *Palmer,* the Court determined that the closing of public swimming pools following an order to desegregate on the ground that the pools could not be operated safely and economically on an integrated basis did not constitute a violation of the Equal Protection Clause. *Id.* at 225–226, 91 S.Ct. at 1945–46. There, the Court, in dicta, warned the judiciary of invalidating a law because "of bad motives of supporters" rather than for its facial content or effect. *Id.* at 225, 91 S.Ct. at 1945. From this, it has been construed, as Platt does here, that the

---

**6.** Platt argues that in light of the strict standard *Strickland* requires to show ineffective assistance of counsel, he essentially has no adequate remedy at law. However, the United States Supreme Court has stated that the purpose of the Sixth Amendment is to "ensure a fair trial" and we are bound by the standard set forth in *Strickland* as the means for reviewing an alleged violation under the Sixth Amendment. *See Strickland, supra,* at 686, 104 S.Ct. at 2063–64. Thus, we are compelled to conclude that the *Strickland* test is the means for testing a Sixth Amendment claim

and we decline Platt's invitation to adopt a different standard here.

**7.** The Fourteenth Amendment to the United States Constitution provides, "No State shall make or enforce any law which will abridge privileges and immunities of citizens of the United States; nor shall any State ... deny to any person within its jurisdiction the equal protection of the laws."

disproportionate *effect* of a statute can violate equal protection.

Yet, the Court later rejected this reading of *Palmer* in *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), stating that "[*Palmer* ] did not involve, much less invalidate, a statute or ordinance having neutral purposes but disproportionate racial consequences." *Washington, supra*, at 243, 96 S.Ct. at 2049. Since *Palmer*, the Court has expressly held that proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. *See Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 273, 99 S.Ct. 2282, 2293, 60 L.Ed.2d 870 (1979); *Arlington Heights v. Metropolitan Housing Corp.*, 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1976); *Washington, supra*, at 242, 96 S.Ct. at 2048–49.

> In *Washington*, the Court opined:
>
> ... [W]e have not held that a law, neutral on its face and serving ends otherwise within the power of government to pursue, is invalid under the Equal Protection Clause simply because it may affect a greater proportion of one race than of another. Disproportionate impact is not irrelevant, but it is not the sole touchstone of invidious racial discrimination forbidden by the Constitution. Standing alone, it does not trigger the rule ... that racial classifications are to be subjected to the strictest scrutiny and are justifiable only by the weightiest of considerations.

*Id.* at 242, 96 S.Ct. at 2049 (citation omitted). *See also Steelman v. State*, 602 N.E.2d 152, 157 (Ind.Ct.App.1992) (proof of a racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause). Discriminatory purpose implies that the decision maker selected or reaffirmed a particular course of action at least in part "because of" not merely "in spite of," its adverse effects upon an identifiable group. *Feeney, supra*, at 279, 99 S.Ct. at 2296. Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence as may be available. *Arlington Heights, supra*, at 266, 97 S.Ct. at 563–64.

In his complaint, Platt alleges: (1) it is known and understood to the white majority on the City County Council that most of the persons represented by public defenders in Marion County are African–Americans; (2) part of the reason that the white majority party on the City County Council has neglected to assure that legal counsel is provided to poor persons charged with crimes in Marion County is a racial animus or lack of concern about how African–Americans are treated by the criminal justice system; and (3) the systemic and funding deficiencies of the Indiana and Marion County criminal defense scheme for indigents violates the Plaintiffs', and the class they represent, rights guaranteed by the Fourteenth Amendment to be free from governmental policies which have a known racially discriminatory effect. *See* Record, pp. 836–837.

Arguably, Platt has presented evidence that the existing Marion County public defender system may negatively affect African–Americans. Yet, such an uneven effect will not give rise to constitutional concern unless the policy is an obvious pretext for discrimination against the suspect class. *David K. v. Lane*, 839 F.2d 1265, 1272 (7th Cir.1988). Nevertheless, Platt urges this court to infer discriminatory intent from the alleged underfunding and neglect of the public defender system. Absent any evidence of intentional discrimination, this inference cannot give rise to proof of a Constitutional violation. *See Feeney, supra*, at 279, n. 25, 99 S.Ct. at 2296. Accordingly, we conclude that the facts as alleged in Count XIII of Platt's complaint are insufficient to support the claim that the Marion County public defender system was enacted and is operated with the purposeful intent of discriminating against African–Americans in violation of the Equal Protection Clause of the Fourteenth Amendment.

## IV.

### *Separation of Powers*

Finally, Platt contends that the Marion County Public Defender Agency and the Marion County Public Defender Board violate the constitutionally mandated separation

of powers as set forth in Art. III, § 1 of the Indiana Constitution.[8]

The Indiana Supreme Court has set forth the following standard of review for assessing constitutional challenges:

> Legislation under constitutional attack ... is clothed in a presumption of constitutionality. The burden to rebut this presumption is upon any challenger, and all reasonable doubts must be resolved in favor of an act's constitutionality. When a statute can be construed to support its constitutionality, such construction must be adopted.... Further, it is the challenger's burden to show that the alleged constitutional defects are clearly apparent.

*Matter of Tina T.*, 579 N.E.2d 48, 56–57 (Ind.1991) (citation omitted).

Platt argues that the municipal ordinance establishing the Marion County Public Defender Agency and the Marion County Public Defender Board is violative of Art. III, § 1 because it allows the City–County Council to make four appointments to the Public Defender Board and have final approval over the employment of the chief public defender. In addition, the ordinance allows the Presiding Judge of the Marion County Municipal Court and the Marion County Superior Court to make two appointments to the Board, and allows the Mayor to make one appointment. Platt contends that this makeup commingles the powers of the three branches rather than separates them as required by the Indiana Constitution. Platt points out that the Board functions exclusively within the judicial branch; yet, pursuant to the ordinance the legislative branch (City–County Council) has the power of appointment of Board members and the right of confirmation over the employment of the chief public defender. Thus, Platt argues, this encroachment on the judiciary's power is violative of Art. III, § 1.

In assessing challenges under the separation of powers doctrine, the Indiana Supreme Court has determined that statutes which divest the judiciary of its powers will violate Art. III, § 1. *See State ex rel. Kostas v. Johnson*, 224 Ind. 540, 69 N.E.2d 592 (1946) (statute which divested a trial court of jurisdiction for failure to rule within a purported time excessive legislative interference in the judiciary). However, the court has determined that a statute which allows a local coordinating committee to review and recommend the restrictive placement of juveniles was not an attempt on the part of the legislature to supersede the power of the judiciary. *See Matter of Tina T., supra,* at 57–59. There, the court also stated that allowing the director of the county welfare department, a member of the executive branch, to be a voting member of the committee did not violate the doctrine of separation of powers as well. The court noted, "The presence of one member of the executive branch of government on a multi-member committee which serves a purely advisory role to the judicial branch does not violate the separation of powers doctrine." *Id.* at 60.

The stated purpose of the Ordinance is to provide "legal representation to indigent defendants/respondents in criminal, juvenile, probation violation, extradition, child support, civil commitments and other proceedings where the right to counsel has been established by law." Supp. Record, p. 12. Some of its duties include: (1) providing competent legal representation for indigent defendants; (2) establishing guidelines and procedures for the determination of legal indigency; and (3) establishing policy and procedures for the efficient operation of the Agency.

The purpose and goal of the Ordinance is to establish a method for managing the Marion County public defender system; its operation does not infringe upon the judiciary's decision making process. Instead, this purely local ordinance is designed to implement an efficient indigent counsel system to ensure that each defendant in Marion County is provided with his fundamental right to counsel. Construing the Ordinance with a presumption of constitutionality and absent any

---

8. Article III, § 1 provides:

The powers of the Government are divided into three separate departments; the Legislative, the Executive including the Administrative, and the Judicial; and no person, charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided.

evidence that the effect of this Ordinance is to usurp judicial power, we cannot conclude that the facts as alleged in Count XIV of Platt's complaint demonstrate a violation of the doctrine of separation of powers required by Art. III, § 1.

Affirmed.

HOFFMAN and GARRARD, JJ., concur.