### In re the ADOPTION OF BABY W.

**Clinton Sharp, Appellant–Respondent,**

v.

**Mark and Sherri Fields, Appellees Petitioners.**

No. 14A01–0305–CV–189.

Court of Appeals of Indiana.

Sept. 26, 2003.

Rehearing Denied Nov. 26, 2003.

---

Thomas M. Weinland, Frazier & Associates, Indianapolis, IN, Attorney for Appellant.

David W. Stone IV, Stone Law Office & Legal Research, Anderson, IN, Gregory A. Smith, Washington, IN, Attorneys for Appellees.

## OPINION

BAILEY, Judge.

### Case Summary

Clinton Sharp ("Sharp") appeals the trial court's dismissal of his objection to an adoption petition for Baby W filed by

Mark Fields and Sherri Fields (collectively, the "Adoptive Parents").[1] We affirm.

## Issue

On appeal, Sharp raises three issues, which we consolidate and restate as whether his procedural due process right to be advised of his constitutional right to counsel was violated when his parental rights were terminated.

## Facts and Procedural History[2]

### I. Background: The Adoption and Paternity Proceedings

We established many of the facts relevant to this case in Sharp's paternity appeal as follows:

M.W. became pregnant in late 2000. M.W. wished to place the child for adoption and [Adoptive Parents] were interested in adopting the child. M.W. alleged that Sharp was the father of her unborn child. Gregory Smith, [Adoptive Parents'] attorney, contacted Sharp by phone and then sent a follow-up letter dated May 4, 2001, which reads in pertinent part as follows:

... As I indicated in our phone conversation, I represent some folks here that will be petitioning to adopt a child, not yet born, but whom you were named as the possible father. You are referred to under Indiana Law as a "putative father." That is someone who is named as or claims to be the father of a child born out of wedlock but who has not been legally proven to be the child's father.

As we discussed, my clients have been selected to be the adoptive parents by [M.W.] She is willing to consent to this adoption. Since she has named you as the "putative father," I must advise you of her intentions and give you the opportunity to contest the adoption by filing an objection in the adoption court or by filing a paternity action yourself, or to consent to the adoption. You indicated to me you wished to consent to the adoption. As I indicated to you, I would need to send you certain documents. I enclose herewith the following:

1. Notice pursuant to Indiana Code section 31-19-3-4[;]

2. Denial of Paternity and Waiver of Notice of Adoption Proceedings;

3. Return Envelope, postage pre-paid.

The "Notice pursuant to Indiana Code section 31-19-3-4" provided to Sharp is in virtually identical form to that prescribed in section 31-19-3-4:

1. Sharp also filed a Request for Oral Argument, which we hereby deny.

2. In their brief, the Adoptive Parents moved to strike certain portions of Sharp's statement of facts because they are argumentative and are in violation of Indiana Appellate Rule 46. Specifically, the Adoptive Parents challenge the following statements contained in Sharp's appellant's brief:

1. As noted above, the Clay Circuit Court issued [Sharp] notice of a hearing to be held on May 16, 2001 purporting to give Sharp, ... an opportunity to be heard; and

2. It should be noted that this was filed within thirty (30) days of Sharp's receipt of the post birth letter Notice on November 17, 2001.

Appellees' Br. at 2. Because we do not rely upon any of these statements to form the basis of our opinion, we do not need to decide whether they should be stricken. However, we remind Sharp that Indiana Appellate Rule 46(A)(6), which governs the contents of the statement of facts, provides, in relevant part, that:

This statement shall describe the facts relevant to the issues presented for review but need not repeat what is in the statement of the case.

(a) The facts shall be supported by page references to the Record on Appeal or Appendix in accordance with Rule 22(C).

(b) The facts shall be stated in accordance with the standard of review appropriate to the judgment or order being appealed....

[Sharp], who has been named as the father of the unborn child of [M.W.], or who claims to be the father of the unborn child, is notified that [M.W.] has expressed an intention to secure an adoptive placement for the child.

If [Sharp] seeks to contest the adoption of the unborn child, the putative father must file a paternity action to establish his paternity in relation to the unborn child not later than thirty (30) days after the receipt of this notice.

If [Sharp] does not file a paternity action not more than thirty (30) days after receiving this notice, or having filed a paternity action, is unable to establish paternity in relation to the child under IC 31–14 or the laws applicable to a court of another state when the court obtains jurisdiction over the paternity action, the putative father's consent to the adoption or the voluntary termination of the putative father's parent-child relationship under IC 31–35–1, or both, shall be irrevocably implied and the putative father loses the right to contest the adoption, the validity of his implied consent to the adoption, the termination of the parent-child relationship, and the validity of his implied consent to the termination of the parent-child relationship. In addition, the putative father loses the right to establish paternity of the child under IC 31–14 or in a court of another state when the court would otherwise be competent to obtain jurisdiction over the paternity action, except as provided in IC 31–19–9–17(b).

Nothing [M.W.] or anyone else says to [Sharp] relieves [Sharp] of his obligations under this notice.

Under Indiana law, a putative father is a person who is named as or claims that he may be the father of a child born out of wedlock but who has not yet been legally proven to be the child's father. For purposes of this notice, [Sharp] is a putative father under the laws in Indiana regarding adoption.

Following the text were lines for the date and for Attorney Smith's signature, which were left blank. Then followed an acknowledgment of receipt of the notice and the contents thereof and a line for Sharp's signature.

Baby W was born on May 12, 2001, and was immediately taken into custody pursuant to a "request for detention" filed by the Clay County Office of Family and Children and placed in foster care with [Adoptive Parents.] On May 21, 2001, Sharp sent a letter to Attorney Smith responding to the May 4 letter and stating that "paternity needs to be established, before, [sic] I can consent to adoption...." Sharp did not sign and return any of the documents sent to him by Attorney Smith.

*In re Paternity of Baby W,* 774 N.E.2d 570, 572–73 (Ind.Ct.App.2002) (internal citations omitted), *trans. denied.*

On July 2, 2001, Sharp sent Attorney Smith another letter regarding the need for a paternity test ("July 2 Letter"). The July 2 Letter provides, in part, as follows:

If [Baby W] does prove to be my child, I feel it would be in the best interest of the child [if] I meet the adoptive parents[ ] before I consent to the adoption. I am a married man and don't feel I am in the position to rear the child, or ask my wife to take on this responsibility. However, I feel an obligation to insure the child is in a good home.

Appellant's App. at 38. On July 8, 2001, Sharp sent an additional correspondence to Attorney Smith ("July 8 Letter"), wherein Sharp requested that Adoptive Parents pay for one half of the paternity

test. Sharp concluded the July 8 Letter with the following sentence: "If [Adoptive Parents] refuse to assume the cost to have [M.W.] tested as well as [Baby W,] then before I pay any money at all, I will retain my own attorney that will be working in my best interest." *Id.* at 36.

Subsequently, as we determined in Sharp's paternity appeal:

In October of 2001, M.W., Baby W, and Sharp underwent DNA testing which revealed that Sharp was Baby W's father to a 99.99% probability. Sharp paid for the test. Attorney Smith sent the test results to Sharp with a letter dated November 9, 2001, which stated in pertinent part as follows:

As I indicated to you on the phone, enclosed are seven pages of lab testing results concerning the DNA paternity tests.... As you can see the probability of paternity is 99.99%. [M.W.] is still willing to consent to and allow the adoption of the child by my clients provided you will do so as well. If you do not she has indicated that she will withdraw her consent and we will dismiss the adoption petition. She will then be free to pursue a paternity action against you and obtain a child support Order plus attorney fees and costs such as pre-natal and post natal expenses.

We would prefer to proceed with the adoption. The cleanest approach is for you and her to sign the consent forms previously provided to you....

I am enclosing herewith a consent form for you to use again. I am also enclosing a NOTICE form under IC 31–19–4–5. It starts a 30 day time frame running within which you must take action or lose certain rights. If you sign and return the Consent form, then you need do nothing else and this matter can be concluded without further involvement on your part. The mother will likewise have consented and given up her rights and can not pursue any remedy against you concerning the child.

Enclosed was a "Notice pursuant to Indiana Code 31–19–4–5" that provided, in substantially similar form to the language prescribed by the statute, that: [Sharp,] who has been named as the father of the child born to [M.W.] on May 12, 2001, or who claims to be the father of the child born to [M.W.] on May 12, 2001, also known as the "putative father" of the child, is notified that [M.W.] has secured an adoptive placement for the child and consented to an adoption and that a Petition for Adoption has been filed in the office of the Clerk of Daviess County, Indiana Circuit Court, at the Court House in Washington, IN 47501.

If [Sharp,] wishes to contest the adoption of the child, he must file a motion to contest the adoption in accordance with Ind.Code 31–19–10–1 in the above named Court, or he must file a paternity action to establish his paternity in relation to the unborn child under I.C. 31–14 not later than thirty (30) days after the receipt of this notice.

If [Sharp:]

(1) does not file:

(A) a Motion to contest the adoption; or

(B) a paternity action under I.C. 31–14;

within thirty (30) days after receiving service of this notice; or

(2) after filing a paternity action under I.C. 31–14 fails to establish paternity; the above named Court will hear and determine the Petition for Adoption. [Sharp's] consent to the adoption will be irrevocably implied

and he will lose the right to contest either the adoption or the validity of his implied consent to the adoption. He will lose his right to establish his paternity of the child under Indiana Code 31–14.

Nothing the mother, [M.W.], or anyone else says to [Sharp] can relieve [Sharp] of the obligations imposed upon him under this Notice.

[Sharp] is referred herein as the "putative father" because under Indiana law, a putative father is a person who is named as or claims that he may be the father of a child born out of wedlock but who has not yet been legally proven to be the child's father. For purposes of this Notice, [Sharp] is a putative father under the laws in Indiana regarding adoption.

On November 27, 2001, [the Adoptive Parents] filed in the Daviess County Circuit Court ["Adoption Court"] a petition for adoption. Sharp filed in that action on December 3, 2001, a motion contesting the petition for adoption. He then filed in the Clay Circuit Court ["Paternity Court"] on December 12, 2001, a Verified Petition to Establish Paternity and for Custody of Minor Child. [The Adoptive Parents] then intervened in the [Paternity Court] and filed a motion to dismiss on the ground that the court lacked jurisdiction to entertain Sharp's paternity action because of his failure to timely commence an action for paternity after receiving the pre-birth notice pursuant to Indiana Code section 31–19–3–1. Sharp responded to the motion, and it was originally set for a hearing. However, the hearing was subsequently vacated and the trial court granted [the Adoptive Parents'] motion to dismiss without explanation.

*In re Paternity of Baby W*, 774 N.E.2d at 573–76 (internal citations omitted).

## II. The Paternity Appeal

Sharp appealed the trial court's dismissal of his paternity action, in part, on grounds that: (1) the pre-birth adoption notice that he received from the Adoptive Parents did not substantially comply with the requirements of Indiana Code Section 31–19–9–15; and (2) his initiation of DNA testing within the thirty-day time period provided by statute sufficiently preserved his rights. On appeal, in addressing Sharp's first argument, we observed that because Sharp argued one issue at trial—i.e., that the pre-birth notice was defective on its face because it was unsigned and undated—and another issue on appeal, he waived any claim of error. *Id.* at 577. However, we further recognized that, waiver notwithstanding, "[t]he pre-birth notice received by Sharp substantially complied with the dictates of the statute." *Id.* We also noted that Attorney Smith's letter plainly expressed that he represented the people who were interested in adopting Baby W and that such expression served as fair notice that Attorney Smith represented interests contrary to Sharp. *Id.*

In resolving the second issue raised by Sharp in the Paternity Appeal—i.e., that even though Sharp failed to file a paternity action within thirty days pursuant to Indiana Code Section 31–19–9–15, he still substantially complied by initiating DNA testing within that time period—we held that Sharp's actions in attempting to establish paternity did not entitle him to equitable deviation from the thirty-day time limit of the statute. *Id.* at 578. In so holding, we observed that Sharp's May 21 Letter demonstrates no intent to take responsibility for Baby W in the event that testing confirmed that he was the father.

*Id.* Accordingly, we affirmed the judgment of the Paternity Court. *Id.* at 579.

Lastly, and perhaps most importantly for our purposes here, in a footnote to the opinion, we expressed in dicta that:

> Sharp includes as an issue in his brief that "[t]he termination of Sharp's parental rights in adoption proceedings without his being informed of his right to counsel violated Sharp's statutory and constitutional right to counsel." To the extent Sharp contends by this issue that the trial court was required to advise him of the right to counsel, we note that Sharp's parental rights have not been terminated in the paternity action which is the subject of this appeal. We also note that Sharp was represented by counsel in these proceedings. *Any claim that his right to be advised of his right to counsel was violated should be raised in the adoption proceedings.*

*Id.* at 579 n. 5 (emphasis added).

### III. The Adoption Appeal

On January 15, 2003, Sharp filed an objection to the Adoptive Parents' petition to adopt Baby W based upon a violation of his constitutional right to counsel. Sharp also filed an objection to the adoption premised upon a constitutionally invalid waiver of his fundamental right to establish a relationship with Baby W. The Adoption Court set the matter for a final hearing on March 13, 2002. On March 11, 2003, the Adoption Court dismissed Sharp's objection to the adoption petition finding that Sharp's consent to the adoption was irrevocably implied.[3] On April 11, 2003, the Adoption Court certified the March 11, 2003 judgment as a final judgment pursuant to Indiana Trial Rule 54(B). It is from this final judgment that Sharp now appeals.

### Discussion and Decision

### I. Analysis

### A. Law–of–the–Case Doctrine and Res Judicata

From the outset, we observe that, in this Adoption Appeal, Sharp raises two of the same claims that were previously addressed in the Paternity Appeal. In response, the Adoptive Parents contend that the duplicative claims are barred by the doctrines of the law-of-the-case and res judicata. The doctrines of law-of-the-case and res judicata both operate to preclude litigation regarding matters that have already been litigated. *Mutchman v. Consolidation Coal Co.,* 666 N.E.2d 461, 464 (Ind.Ct.App.1996). Specifically, the law-of-the-case doctrine provides that an appellate court's determination of a legal issue binds both the trial court and the court on appeal in any subsequent appeal involving the same case and substantially the same facts. *Cha v. Warnick,* 476 N.E.2d 109, 114 (Ind.1985). The law-of-the-case doctrine stands for the proposition that:

> [F]acts established at one stage of a proceeding, which were part of an issue on which judgment was entered and appeal taken, are unalterably and finally established as part of the law of the case and may not be relitigated at a subsequent stage.

*Platt v. State,* 664 N.E.2d 357, 361 (Ind.Ct. App.1996) (citations omitted). The application of this doctrine is discretionary, and

---

**3.** Indiana Code Section 31–19–9–12 provides, in pertinent part, that:

> A putative father's consent to adoption is irrevocably implied without further court action if the putative father:
> (1) fails to file:

> (A) a motion to contest the adoption in accordance with IC 31–19–10; and
> (B) a paternity action under IC 31–14;
> within thirty (30) days after service of notice under IC 31–19–4....

*See also* IND.CODE § 31–19–9–15.

despite its availability, courts retain the power to revisit their prior decisions or those of a *coordinate* court in any circumstance, "although as a rule courts should be loathe to do so in the absence of extraordinary circumstances." *Id.* The term "coordinate," according to the American Heritage dictionary means "of equal rank, authority, or importance with another." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 502 (2002); *see also Turner v. State*, 751 N.E.2d 726, 729 (Ind.Ct.App. 2001).

■■■■ Similarly, the doctrine of res judicata prevents the repetitious litigation of that which is essentially the same dispute. *Scott v. Scott*, 668 N.E.2d 691, 699 (Ind.Ct. App.1996). The principle of res judicata is divided into two branches: claim preclusion and issue preclusion. *Eichenberger v. Eichenberger*, 743 N.E.2d 370, 374 (Ind.Ct. App.2001). Claim preclusion applies where a final judgment on the merits has been rendered which acts as a complete bar to a subsequent action on the same issue or claim between those parties and their privies. *Id.* Issue preclusion, also referred to as collateral estoppel, bars the subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in a subsequent action. *Id.* Where issue preclusion or collateral estoppel applies, the previous judgment is conclusive only as to those issues actually litigated and determined therein. *Id.*

■■■■ Moreover, collateral estoppel can be used offensively or defensively. *Tofany v. NBS Imaging Sys., Inc.*, 616 N.E.2d 1034, 1037 (Ind.1993). Offensive collateral estoppel, as applicable here, involves a situation where the "plaintiff seeks to foreclose the defendant from litigating an issue the defendant had previously litigated unsuccessfully in an action

with another party." *Eichenberger*, 743 N.E.2d at 374–75 (quoting *Parklane Hosiery v. Shore*, 439 U.S. 322, 326 n. 4, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)). Under modern rules governing the application of collateral estoppel, the prime consideration is whether the party against whom the prior judgment is pled had a full and fair opportunity to litigate the issue and whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel. *Bienz v. Bloom*, 674 N.E.2d 998, 1004 (Ind.Ct.App.1996).

In this Adoption Appeal, Sharp contends that his claims that his due process rights were violated are not barred by the doctrines of res judicata or the law-of-the-case. Instead, he asserts that: "it is the *law of the case* that Sharp's claims are not barred by res judicata." Reply Br. at 2 (emphasis in original). We disagree. The footnote upon which Sharp relies to reassert the same claims that were addressed in the Paternity Appeal, provides, as follows:

> Sharp includes as an issue in his brief that "[t]he termination of Sharp's parental rights in adoption proceedings without his being informed of his right to counsel violated Sharp's statutory and constitutional right to counsel." To the extent Sharp contends by this issue that the trial court was required to advise him of the right to counsel, we note that Sharp's parental rights have not been terminated in the paternity action which is the subject of this appeal. We also note that Sharp was represented by counsel in these proceedings. *Any claim that his right to be advised of his right to counsel was violated should be raised in the adoption proceedings.*

*In re Paternity of Baby W*, 774 N.E.2d at 579 n. 5 (emphasis added). Sharp argues that this footnote expressly authorizes him to raise the issue of the denial of due

process based upon the purported violation of his right to counsel in the Adoption proceedings. Reply Br. at 2. We agree with this proposition and address it in Part II.B of this opinion. However, Sharp continues his argument by exclaiming that: "It is also a fair interpretation [of this footnote] that the [Paternity Appellate Court] authorized Sharp to bring all his due process complaints which were not preserved in the paternity action. It would not be a reasonable interpretation that the [Paternity Appellate Court] determined to single out only one component of due process." *Id.*

▬ Armed with this interpretation of the footnote at issue, Sharp raises two of the same claims in this appeal that he raised in the Paternity Appeal. First, for example, Sharp asserts in the present appeal that his parental rights to Baby W were terminated in violation of his due process rights because the pre-birth notice given to Sharp was insufficient. However, the Paternity Appeal addressed the sufficiency of the pre-birth notice and determined that the "pre-birth notice received by Sharp substantially complied with the dictates of the statute." *In re Paternity of Baby W,* 774 N.E.2d at 577. Accordingly, Sharp is barred by the doctrines of res judicata and the law-of-the-case from relitigating this issue.

▬ Second, Sharp maintains on appeal that his due process rights were violated because his fundamental right to establish a relationship with Baby W was terminated without any affirmative showing that he knowingly and voluntarily waived his rights. Again, to the extent that we addressed this issue in the Pater-

nity Appeal, it is res judicata in the Adoption Appeal.[4]

▬ Assuming arguendo that this issue was preserved for the Adoption Appeal, we note that "the biological link between a putative father and his child alone does not warrant significant constitutional protection." *In re Paternity of M.G.S.,* 756 N.E.2d 990, 1005 (Ind.Ct.App.2001) (quoting *Lehr v. Robertson,* 463 U.S. 248, 261–62, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983)). Nevertheless, "an unwed father ... has a constitutionally protected inchoate or 'opportunity interest' to form a relationship with his child." *In re Paternity of M.G.S.,* 756 N.E.2d at 1005. However, once the putative father "has grasped this opportunity by demonstrating a full commitment to the responsibilities of parenthood by coming forward to participate in the rearing of his child, his parental rights with respect to that child ripen into an interest which is entitled to substantial protection under the Due Process Clause." *Id.*

▬ Here, the record reveals that after discovering that M.W. named him as the father of her baby, he wrote three letters to Attorney Smith regarding his parental status. In the May 21 Letter, Sharp acknowledges that he was named as the potential father of Baby W, but requests that paternity be established before he consents to the adoption "because it would not be correct or proper ... to consent to the adoption of a child that may not be [his] child." Appellant's App. at 126. Subsequently, in his June 8, 2001 correspondence with Attorney Smith, Sharp requests that the Adoptive Parents bear one half of the cost of the paternity test in the event that he is proven not to be Baby W's

---

4. In the Paternity Appeal, we observed that Sharp's May 21 Letter demonstrated no intent to take responsibility for Baby W in the event that testing confirmed that he was the father.

*In re Paternity of Baby W,* 774 N.E.2d at 578. Accordingly, we affirmed the judgment of the Paternity Court. *Id.* at 579.

father. Lastly, in the July 2 Letter, Sharp expresses his belief that he is not the father of Baby W and reiterates the need for a paternity test to prove that he is not the father. Sharp also asserts that:

> If [Baby W] does prove to be my child, I feel it would be in the best interest of the child [if] I meet the adoptive parents[ ] before I consent to the adoption. I am a married man and don't feel I am in the position to rear the child, or ask my wife to take on this responsibility. However, I feel an obligation to insure the child is in a good home.

*Id.* at 38.

In this appeal, Sharp asserts that by taking reasonable steps to establish paternity, he was establishing a relationship with Baby W. However, as the above letters reveal, Sharp's primary, if not only, motivation for taking the paternity test was to prove that he was not the father of Baby W or, in the alternative, to fulfill his "obligation" to insure that Baby W would be placed in a good home. *Id.* Nowhere in these letters does Sharp demonstrate an intent to rear Baby W or otherwise be involved in Baby W's life. Thus, under the facts presented in this Adoption Appeal, Sharp has not grasped his opportunity to establish a relationship with Baby W. Accordingly, Sharp had merely an executory interest in forming a relationship with Baby W that had not ripened into an interest that was entitled to substantial protec-

tion under the Due Process Clause. As such, the Adoption Court did not violate Sharp's due process rights on this issue.

### B. Sharp's Right to Be Informed of His Right to Counsel

■ Sharp also argues that the termination of his parental rights in the Adoption proceedings violated his statutory and constitutional right to counsel because he was not informed of his right to counsel. In Indiana, the right to counsel in proceedings to terminate parental rights is granted by statute. *See* IND.CODE § 31–32–2–5.[5] To protect the right, our statutes also provide that the trial court must inform the parents in involuntary termination both of their right to be represented by counsel and their right to appointed counsel if they are indigent. IND.CODE § 31–35–1–12.[6] The rights afforded by the involuntary termination statutes apply in adoption proceedings where the petitioners seek to adopt over the objections of one or both of the natural parents. *Taylor v. Scott,* 570 N.E.2d 1333, 1335 (Ind.Ct.App.1991). In this regard, the parent has three related statutory rights: (1) the right to be represented by counsel; (2) the right to have counsel provided if he could not afford private representation; and (3) the right to be informed of the two preceding rights. *Id.*

■ In the present case, Sharp contends that he was denied due process because Attorney Smith never informed him

---

5. Indiana Code Section 31–32–2–5 provides that: "A parent is entitled to representation by counsel in proceedings to terminate the parent-child relationship."

6. Indiana Code Section 31–35–1–12 provides, in part, that:
 For purposes of sections 6 and 8 of this chapter, the parents must be advised that:
 * * * * *

(7) the parents are entitled to representation by counsel, provided by the state if necessary, throughout any proceedings to terminate the parent-child relationship against the will of the parents. . . .

of his right to counsel. However, we have found no authority, and Sharp has failed to present us with any caselaw, to suggest that Attorney Smith had a duty to inform Sharp of his right to counsel. Thus, to the extent that Sharp's argument concerns Attorney Smith's failure to advise Sharp that he had the right to the advice of an attorney, we hold that it is without merit. In so holding, we observe that it is the law-of-this-case that Attorney Smith's May 4 Letter plainly expressed that he represented the Adoptive parents and that such expression served as fair notice that Attorney Smith represented interests contrary to Sharp. *In re Paternity of Baby W,* 774 N.E.2d at 577. We further acknowledge that in Sharp's July 8 Letter to Attorney Smith, Sharp advised that: "If [Adoptive Parents] refuse to assume the cost to have [M.W.] tested as well as [Baby W,] ... [he] will retain [his] own attorney that will be working in [his] best interest." Appellant's App. at 36. As evidenced by this letter, prior to the commencement of the adoption and paternity proceedings, Sharp knew that Attorney Smith's interest in Baby W might potentially differ from his own and, further, that Sharp could retain counsel to better represent his own interests.

 Moreover, in this case, it was the Adoption Court, not Attorney Smith, that had the duty to inform Sharp of his right to counsel. Our review of the record reveals that the Adoption Court did not inform Sharp of his right to be represented by counsel. However, a violation of the right to counsel is subject to the constitutional rule of harmless error. *See Her-*

*nandez v. State,* 761 N.E.2d 845, 853 (Ind. 2002), *reh'g denied; see also Pearson v. State,* 441 N.E.2d 468, 478 (Ind.1982). Here, the record reflects that Sharp was represented by counsel at all stages of both the adoption and paternity proceedings. Indeed, the record demonstrates that Sharp was represented by the *same* counsel during the totality of the paternity and adoption proceedings, including this Adoption Appeal. Thus, any error in the trial court's failure to inform Sharp of his right to counsel is harmless.

## C. Damages Pursuant to Indiana Appellate Rule 66(E)

 The Adoptive Parents request that we assess damages, including attorney fees, against Sharp because he made "the same warmed over arguments [in this appeal that] he made in his first appeal." [7] Appellees' Br. at 22. Indiana Appellate Rule 66(E) provides that: "The [Appellate] Court may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the [Appellate] Court's discretion and may include attorneys' fees." A strong showing is "required to justify an award of appellate damages, and the sanction is not imposed to punish lack of merit unless an appellant's contentions and arguments are utterly devoid of all plausibility." *Kuehl v. Hoyle,* 746 N.E.2d 104, 110 (Ind.Ct.App. 2001). Here, although some of Sharp's claims were barred by the doctrines of the law-of-the-case and res judicata, and Sharp's argument that he was denied due process because the Adoption Court failed

---

**7.** The Adoptive Parents also urge us to take judicial notice that Sharp's appellant's brief on this appeal is virtually identical to the one he submitted in the Paternity Appeal. However, neither Sharp nor the Adoptive Parents have included, in the record of this appeal, the parties' briefs for the Paternity Appeal.

Thus, we are in no position to take judicial notice of any similarities between Sharp's appellant's briefs in both the Paternity and Adoption Appeals. Nonetheless, we have decided the present appeal on the basis of res judicata.

to advise him of his right to counsel did not carry the day, the Adoptive Parents have not proven that this appeal was devoid of all plausibility. Rather, it appears that underlying Sharp's pursuit of the present appeal was an erroneous interpretation of a footnote contained in our resolution of the Paternity Appeal. Therefore, we deny the Adoptive Parents' request for appellate damages.[8] *See, e.g., Dore v. Dore*, 782 N.E.2d 1015, 1022 (Ind.Ct.App. 2003).

For the foregoing reasons, we affirm the Adoption Court's dismissal of Sharp's objection to the Adoptive Parents' petition to adopt Baby W.

Affirmed.

KIRSCH, J., and VAIDIK, J., concur.

---

8. In his reply brief, Sharp also requests that we assess damages against the Adoptive Parents because he was forced to address their "disingenuous arguments" that "Sharp's claims are barred by res judicata and are frivolous." Reply Br. 2. However, Sharp has failed to present a cogent argument on this point and, thus, we deem the issue waived. *See* Ind. Appellate Rule 46(A)(8)(a); *see e.g., Hollowell v. State*, 707 N.E.2d 1014, 1025 (Ind.Ct.App.1999) (observing that failure to present cogent argument constitutes waiver of issue for appellate review). Further, we note that the Adoptive Parents' arguments regarding res judicata were not disingenuous as they carried the day in this appeal.