Mary Ann **EICHENBERGER**, Appellant/Cross-Appellee-Defendant/Counterclaimant,

v.

Walter J. **EICHENBERGER**, Appellee/Cross-Appellant-Plaintiff/Counterdefendant.

No. 82A01–0010–CV–330.

Court of Appeals of Indiana.

Feb. 27, 2001.

Todd I. Glass, Leslie C. Shively, Fine & Hatfield, Evansville, IN, Attorneys for Appellant.

James F. Flynn, Newman, Trockman, Lloyd, Flynn & Rheinlander, Evansville, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

Appellant/Cross–Appellee Mary Ann Eichenberger brings this interlocutory appeal of the trial court's grant of partial summary judgment in favor of Appellee/Cross–Appellant Walter on her affirmative defense of collateral estoppel. Specifically, she maintains that Walter is estopped from litigating his purported interest in a third-party beneficiary contract. Mary Ann also argues that the trial court improperly found a genuine issue of material fact: that is, whether her mother *intended* to revoke the third-party beneficiary contract which was for Walter's benefit.

Walter cross-appeals, claiming that the trial court improperly found a genuine issue of material fact. Specifically, he maintains that his mother *did not intend* to revoke a third-party beneficiary contract in his favor. Walter also contends that the trial court should have granted summary judgment in his favor on Mary Ann's counterclaim.

## FACTS

In August 1970, almost thirty years before she died, Mathilda Eichenberger ("Tillie") wrote a will with the assistance of her attorney Ed Johnson. Her will devised specific portions of her nine-acre home to each of her two children: Walter and Mary Ann. She devised a 2.10–acre tract (Tract 1) to Mary Ann separately. She also divided a 6.9–acre tract (Tract 2) into two pieces—devising 2 acres for Mary Ann and 4.9 acres for Walter. Record at 82–83.

Thirteen years after executing the will, in August 1983, Tillie met with Johnson and Mary Ann at Johnson's law office. Johnson prepared a deed for Tillie to convey the entire portion of Tract 2 to Mary Ann, subject to a life estate for Tillie. Before signing the deed, Tillie asked, "If I deed the property to you Mary Ann how will ... your brother obtain the portion I want him to have?" R. at 56. Unsatisfied with Mary Ann's assurances that Walter would receive the property, Tillie asked Johnson, "[H]ow am I going to handle this?" R. at 56. To allay Tillie's concern, Johnson drafted an agreement, which provided:

I, the undersigned, Mary Ann Eichenberger, hereby represent to my mother, Mathilda Eichenberger[,] that at her death, I·will divide the above described real estate according to the provisions of her Last Will and Testament which are known to me.

/s/   Mary Ann Eichenberger

Witnesses:

/s/  Edwin W. Johnson

/s/  Dana L. West

R. at 84. Johnson later typed the agreement onto the bottom of an unexecuted copy of the deed. However, the executed copy of the deed did not contain the agreement. Tillie and signed the deed and Mary Ann signed the agreement contemporaneously.

Five years after this meeting, in October 1988, Tillie executed a quitclaim deed to Mary Ann, granting her both Tracts 1 and 2.[1] R. at 126. Then, in June 1996, Tillie telephoned Johnson asking him "to get rid of the will." R. at 73. Tillie explained that she had "deeded all of [her] property away," so "[t]here [was] nothing to go by in the will." R. at 73. Afterward, Johnson wrote at the bottom of the card containing the summary of Tillie's will: "Assets deeded to daughter per telephone conversation 6–17–96." R. at 72–73, 454.

Mary Ann subsequently sold the real estate, comprising Tracts 1 and 2, to John P. Hunter, transferring it to him by warranty deed on March 12, 1999. Three days later, Hunter initiated a quiet title action against Walter and his son and daughter-in-law.[2] Walter was served with notice of the quiet title action on four occasions, dating from March 23, 1999, to June 4, 1999. He acknowledged that he had received such service on each occasion but did not appear. Consequently, the trial court entered a default judgment in favor of Hunter on September 16, 1999.

During the pleading stage of the quiet title action, Walter was appointed Tillie's guardian at the recommendation of Tillie's guardian *ad litem.*[3] As her guardian, Walter attempted to locate and marshal Tillie's guardianship estate. Thus, on April 26, 1999, Walter requested that Johnson's law firm produce all files, "whether open or closed," maintained on Mathilda Eichenberger. R. at 165. On May 10, 1999, the firm responded that it had represented Tillie only briefly and that it had no open or closed filed for Tillie, the matter having been transferred to another attorney outside the firm. R. at 167. The next day, Walter once more inquired about the deeds attached to the Hunter quiet title action. The firm reviewed its files again, replying that it had found no documents other than Tillie's deeds to Mary Ann.

Tillie died on November 21, 1999. Two weeks later, Walter's wife telephoned Johnson's law firm and asked if the firm had a copy of Tillie's will. R. at 452–53. On December 10, 1999, the firm delivered copies of Tillie's will and a copy of the 1983 deed containing the agreement that Mary Ann would divide Tract 2 according to Tillie's last known will. The agreement formed the basis of this action against Mary Ann for breach of contract with respect to Tract 2.

In response, Mary Ann filed an answer, raising the affirmative defense of collateral estoppel, and a counterclaim for damages based on what she labeled Walter's "frivolous, unreasonable, and groundless" complaint. R. at 20. Among other affirmative defenses, Mary Ann contended that Walter was collaterally estopped from claiming an interest in the real estate and that Tillie had revoked the third-party beneficiary contract. Specifically, Mary Ann claimed that any interest Walter had in Tract 2 was necessarily adjudicated in the quiet title action. After the discovery phase, Walter moved for summary judgment on his claim for breach of a third-party beneficiary contract. Mary Ann shortly there-

---

1. Despite having conveyed Tract 1 in fee simple to Mary Ann in 1976, she also quitclaimed any interest Tract 1 in 1988.

2. Walter's son and daughter-in-law did not join him in the action against Mary Ann.

3. A guardian was appointed for Tillie because she was "unable to maintain and care for her person or her financial affairs due to her old age and infirmity." R. at 418.

after moved for summary judgment on her counterclaim.

After a hearing on the motions, the trial court concluded that there was a genuine issue of material fact: whether Tillie had intended "to terminate the third-party beneficiary contract upon" either deeding her life estate to Mary Ann in August 1988 or revoking her will in June 1996 or both events. R. at 249, 263. The trial court also granted partial summary judgment to Walter on Mary Ann's affirmative defense of collateral estoppel. Pursuant to Ind. Appellate Rule 4(B)(6),[4] Mary Ann appeals and Walter cross-appeals.

## DISCUSSION AND DECISION
### I. Standard of Review

A grant of summary judgment requires that the evidence show no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). On appeal from summary judgment, the reviewing appellate court faces the same issues that were before the trial court and analyzes them in the same way. *Indiana Dept. of Envtl. Mgmt. v. Med. Disposal Servs., Inc.*, 729 N.E.2d 577, 579 (Ind. 2000). Although the nonmovant has the burden of demonstrating the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that the nonmovant was not denied his day in court. *Id.* The standard of review is the same when reviewing grants of partial summary judgment. *See DRW Builders, Inc. v. Richardson*, 679 N.E.2d 902, 905 (Ind.Ct.App.1997).

### II. Issue Preclusion/Collateral Estoppel

Mary Ann contends that the quiet title action, by application of issue preclusion, bars Walter from claiming an interest in the real estate. Specifically, she claims that Walter had an opportunity to litigate the issue of his interest in the real estate during the quiet title action. Walter counters that issue preclusion does not apply in the instant case inasmuch as Mary Ann was not a party to the quiet title action between Hunter and him.

The doctrine of *res judicata* is divided into two subcategories: claim preclusion and issue preclusion. Claim preclusion applies where a final judgment on the merits has been rendered which acts as a complete bar to a subsequent action on the same issue or claim between those parties and their privies. *Northern Indiana Pub. Serv. Co. v. Sharp*, 732 N.E.2d 848, 854 (Ind.Ct.App.2000). Issue preclusion bars the subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in a subsequent action. *Id.* Where issue preclusion applies, the previous judgment is conclusive only regarding those issues actually litigated and determined therein. *Id.* A default judgment is a judgment on the merits for the purposes of *res judicata*. *State Exchange Bank of Culver v. Teague*, 495 N.E.2d 262, 266 (Ind.Ct.App.1986) (citing *Patterson v. State*, 12 Ind. 86 (1859)); *see also* 65 Am Jur.2d *Quieting Title* § 89 (1972) (noting in quiet title actions, "a default judgment . . . is just as conclusive upon the issue of title of the property involved as is a judgment rendered" in a contested action).

Mary Ann relies on issue preclusion, which is also referred to as collateral estoppel by Indiana case law. Collateral estoppel has been further divided into two other categories: "offensive" collateral estoppel and "defensive" collateral estoppel. *Tofany v. NBS Imaging Sys., Inc.*, 616 N.E.2d 1034, 1037 (Ind.1993). Offensive collateral estoppel involves a situation where the " 'plaintiff seeks to foreclose the

---

4. The 2001 version of the appellate rules governs any dispute where the notice of appeal (called the praecipe under the 2000 appellate rules) is filed on or after January 1, 2001. Therefore, in the case of "discretionary interlocutory appeals," Ind. Appellate Rule 14(B) (2001) will replace App. R. 4(B)(6) (2000).

defendant from litigating an issue the defendant had previously litigated unsuccessfully in an action with another party.'" *Id.* (quoting *Parklane Hosiery v. Shore,* 439 U.S. 322, 326 n. 4, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)). Defensive collateral estoppel involves a situation where a "defendant seeks to prevent a plaintiff from asserting a claim which the plaintiff had previously litigated and lost." *Id.*

Our supreme court, in *Sullivan v. American Casualty,* relaxed the once rigid standards of collateral estoppel, allowing a stranger to the first action to take advantage of collateral estoppel in a subsequent action. 605 N.E.2d 134, 138 (Ind.1992). The *Sullivan* court formulated the following two-part rule for applying collateral estoppel: 1) whether the party against whom the prior judgment is pled had a full and fair opportunity to litigate the issue; and 2) whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel. *Id.* If the two elements are fulfilled, then the court may apply collateral estoppel to prevent relitigation of the same issue.

We first dispose of Walter's contention that Mary Ann's participation in the quiet title action was required for her to raise collateral estoppel in the instant case. As explained in *Sullivan,* a nonparty to the first action may raise collateral estoppel in a subsequent action. *Id.* As a result, Mary Ann's nonparticipation in the quiet title does not prevent her from asserting collateral estoppel.

Mary Ann argues that Walter had a full and fair opportunity to litigate the issue of his right to the real estate in the quiet title action. However, Mary Ann has incorrectly cast the issue. The issue in the instant case is whether Walter has an interest in a third-party beneficiary contract. Notwithstanding an equitable interest Walter may have had in the real estate, Hunter, who was a bona fide purchaser, extinguished any such interest. *See Keybank Nat'l Ass'n v. NBD Bank,* 699 N.E.2d 322, 326–27 (Ind.Ct.App.1998). Therefore, the trial court properly granted summary judgment to Walter on this affirmative defense. Having determined that Walter had not litigated the issue of the third-party beneficiary contract in the quiet title action, we need not address "whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel." *Sullivan,* 605 N.E.2d at 138.

### III. Contract Revocation

Mary Ann also maintains that the trial court improperly concluded that a genuine issue of material fact existed: that is, whether Tillie had intended to revoke the third-party beneficiary contract by either deeding her life estate to Mary Ann in August 1988 or revoking her will in June 1996 or both events. R. at 249. Walter also contends that the trial court improperly determined the issue, only he argues that he is entitled to summary judgment because Tillie never intended to revoke the contract. In addressing both Walter's and Mary Ann's contentions, we note that parties to third-party contracts (here, Tillie and Mary Ann) have a right to modify or revoke such contracts until the contract has been "accepted, adopted, or acted upon" by the third-party beneficiary. *Matter of Estate of Bannon,* 171 Ind.App. 610, 358 N.E.2d 215, 218 n. 7 (1976). Moreover, under general contract law, a party may not revoke or modify the contract without the consent of the other party. *See id.* at 218.

In light of these principles, the critical factual issue is whether Tillie ever intended to revoke the contract. In applying the summary judgment standard, a fact is "material" if it helps prove or disprove an essential element of the plaintiff's cause. *In re the Estate of Weitzman,* 724 N.E.2d 1120, 1124 (Ind.Ct.App.2000). Further, a fact is "genuine" if the factfinder is required to resolve an opposing party's different version of the underlying facts. *Id.* We believe that Tillie's possible revocation of the contract is a material fact inasmuch as the consent of parties to a

third-party contract is required for revocation. Likewise, the factfinder here is required to discern Tillie's intent based on her acts of deeding the property and revoking her will. Therefore, the trial court properly determined that Tillie's intent to revoke the contract is a genuine issue of material fact precluding summary judgment.

### IV. Frivolous Suit

The trial court certified for our review the issue of whether Mary Ann was entitled to summary judgment on her counterclaim. R. at 263. Mary Ann seeks damages in her counterclaim for Walter's purported "frivolous, unreasonable, and groundless" complaint. R. at 20. IND. CODE § 34–52–1–1 allows a court to award attorney fees when a party brings or prosecutes a "frivolous, unreasonable, or groundless" lawsuit. This court has developed guidelines for addressing frivolous or unreasonable claims:

> [A claim is frivolous when] "it is taken primarily for the purpose of harassment, if the attorney is unable to make a good faith and rational argument on the merits of the action, or if the lawyer is unable to support the action taken by a good faith and rational argument for an extension, modification, or reversal of existing law." In determining whether a claim is unreasonable, this court looks to the totality of the circumstances, including the law and facts ascertainable at the time of filing. If after this inquiry the court finds no reasonable attorney would consider the claim worthy of litigation, the claim is unreasonable.

*McDonald v. McDonald,* 631 N.E.2d 522, 524 (Ind.Ct.App.1994) (quoting *Elbert v. Elbert,* 579 N.E.2d 102, 114 (Ind.Ct.App. 1991)). Given the trial court's proper disposal of Mary Ann's affirmative defense and the finding of a genuine issue of material fact, we cannot say that Walter's attorney was unable "to make a good faith and rational argument on the merits." *See id.* Likewise, on the same basis, we cannot say

that "no reasonable attorney would consider" Walter's claim worthy of litigation. *See id.*

### CONCLUSION

In sum, the trial court 1) properly rejected Mary Ann's affirmative defense of collateral estoppel; 2) properly determined that a genuine issue of material fact existed regarding Tillie's intent to revoke the contract; and 3) should enter summary judgment in favor of Walter on Mary Ann's counterclaim.

Judgment affirmed in part, and the cause remanded for entry of summary judgment in favor of Walter on Mary Ann's counterclaim for frivolous suit and for determination of Tillie's intent to revoke the third-party beneficiary contract.

BROOK and BARNES, JJ., concur.