**MEMORANDUM DECISION**

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 05 2016, 6:36 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Carl Paul Lamb
Carl Lamb & Associates
Bloomington, Indiana

ATTORNEY FOR APPELLEE

Lisa M. Joachim
Richard A. Mann, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Rahlina D. Funk,

*Appellant-Respondent,*

v.

Raymond A. Funk,

*Appellee-Petitioner.*

August 5, 2016

Court of Appeals Case No.
55A01-1512-DR-2223

Appeal from the Morgan Superior Court
The Honorable Peter R. Foley, Judge

Cause No. 55D01-1103-DR-546

**Bradford, Judge.**

# Case Summary

Appellant-Respondent Rahlina D. Funk ("Mother") and Appellee-Petitioner Raymond A. Funk ("Father") were married in 2003. Mother and Father's first child S.F. was born in 2006. In late 2010, Mother, who was pregnant, left for

Florida with S.F. and communicated to Father, eventually, that she would not return. In March of 2011, Mother requested and received a temporary restraining order from the 9th Circuit Court of Osceola County, Florida ("the Florida Court"). Later that month, Father filed a dissolution petition in the trial court. The couple's second child C.F. was born in June of 2011.

[2] In July of 2012, after Mother had failed to comply with several orders to return the children to Indiana, the trial court ordered that Father's mother, Donna Funk, be awarded custody of the children. Donna has never taken custody of the children. Also in July of 2012, the trial court issued a writ of bodily attachment for Mother and the State charged Mother with two counts of Class D felony interference with a custody order. Later in 2012, Mother's motion to cede jurisdiction over the custody issue to the Florida Court was denied, a denial she attempted to appeal as a discretionary interlocutory appeal. This court declined to assume jurisdiction over the interlocutory appeal. Mother then sought a writ of mandamus from the Indiana Supreme Court, which petition was denied.

[3] In September of 2013, the Florida Court ceded jurisdiction over the custody issue to the trial court. In August of 2015, the trial court held a final hearing on Father's dissolution petition, which hearing Mother did not attend. In November of 2015, the trial court issued its dissolution decree in which, *inter alia*, it dissolved Father and Mother's marriage and awarded full physical and legal custody of S.F. and C.F. (collectively, "the Children") to Father. The following issues are presented for appellate consideration:

I. whether the res judicata and/or law-of-the-case doctrines bar consideration of the issue of jurisdiction;

II. whether the trial court erred in failing to give full faith and credit to the Florida Court's "initial custody order" before that court ceded jurisdiction to the trial court;

III. whether the trial court erred in granting Donna custody of the Children in 2012; and

IV. whether the trial court erred in awarding sole custody of the Children to Father.

Because we reject all of the above arguments, we affirm.

# Facts and Procedural History

[4] Most of the facts relevant to this appeal were related by the trial court in its decree of dissolution, issued on November 18, 2015:

## I. FINDINGS OF FACT

1. Father filed his Petition for Dissolution of Marriage on March 16, 2011.

2. Father and Mother were married on May 14, 2003.

3. Father lived in the State of Indiana and Morgan County for the six (6) months immediately preceding the filing of his Petition and this Court has jurisdiction over the matter pursuant to I.C. 31-15-2-6.

4. There are two (2) minor children born of this marriage, namely: [S.F.] (DOB: 11/28/2006) and [C.F.] (DOB: 06/09/2011).

5. There has been an irretrievable breakdown of the marriage such that the marriage should be dissolved.

6. At the time of the final hearing in this matter, Mother is not known to be pregnant.

7.      The Court takes judicial notice of the pleadings and filings in the matter of <u>State of Indiana v. Rahlina D. Funk</u>, Cause Number 55D03-1312-FD-001640, currently pending in the Morgan Superior Court 3.

8.      The Court takes judicial notice of the Court's file, the prior testimony at all previous hearings in this matter, and the Court's own orders.

### A.      Procedural History

9.      This Court conducted a preliminary hearing in this matter on August 22, 2011, and scheduled the matter for a further preliminary hearing. At the August 22, 2011 hearing the Court ordered that Father could have parenting time with the children at the Martinsville City Park on that afternoon.

10.      The Court next held a hearing on December 13, 2011. Over the objections of Mother, the Court ordered Father to have Skype and telephonic communication with the children three (3) days a week.

11.      On March 6, 2012 the preliminary hearing was completed and the Court issued its Preliminary Order on March 7, 2012.

12.      The Court's Preliminary Order awarded legal and physical custody of the children to Mother and Father was granted several weeks of unsupervised parenting time with the children to occur at paternal grandmother's home. Father's parenting time included one (1) week at spring break, the first two (2) weeks of summer break, one (1) week at fall break, and one (1) week the week before Christmas.

13.      Between the Preliminary Hearing and the next hearing before the Court on July 27, 2012, the parties filed several motions with the Court.

14.      On June 12, 2012, the Court issued an order, among other things, requiring Mother to bring the children to the State of Indiana within 14 days of the order. On June 28, 2012, Father filed his Verified Petition for Permanent Injunction, For Temporary Restraining Order, and for Emergency Petition For

Modification of Custody. On July 2, 2012, the Court issued an order setting Father's Verified Petition for hearing.

15. The next hearing was conducted on July 27, 2012. Mother and Father appeared at the hearing with their respective attorneys. The Court found that there had been a substantial change in circumstances since the Preliminary Hearing and awarded custody of the minor children to Father's mother, Donna Funk ("Donna"). The Court found that Mother had failed to abide by the Court's many orders to bring the children to Indiana and had prevented Father from having parenting time with the children. The Court ordered that the children be enrolled at schools in Indiana, that Mother and Father have full psychological evaluations, that the children be evaluated by Dr. Jason Warner, Ph.D., LMFT, LMHC, and that Donna be entitled to travel to Florida to pick the children up and return them to Indiana.

16. On August 10, 2012, based upon Mother's failure to cooperate with the Court's prior orders, the Court issued a Writ of Attachment.

17. Mother had filed an action for a civil order of protection and custody in the 9th Circuit Court, Osceola County, Florida, Cause No. 2011-DR-1043. On August 10, 2012, this Court issued an order reciting that [the previous judge on this case] had spoken with Judge Arnold of the Osceola Court and they had concurred that Indiana would retain jurisdiction in this matter.

18. The Court next conducted a hearing on the jurisdictional issues only on October 5, 2012. Mother did not appear at the hearing, appearing by counsel only. The Court denied Mother's request to cede jurisdiction of the custody issue to the Florida Court.

19. Mother then filed a request to certify certain orders for interlocutory appeal, which request was granted by the Court. Mother filed her Notice of Appeal on November 26, 2012. On April 5, 2013, the Court of Appeals issued an Order in Cause 55A01-1209-DR-428 dismissing Mother's appeal with prejudice.

21.[1]    Mother then filed an original action of mandamus with the Indiana Supreme Court. That action was dismissed by the Indiana Supreme Court, Cause No. 55S00-l309-OR-627, on October 1, 2013.

22.    On September 26, 2013, Judge Arnold issued an order in the Florida litigation that relinquished and ceded jurisdiction over all issues stemming from the parties' marital relationship and divorce to The State of Indiana, including without limitation the issues of child custody, visitation time-sharing and support.

23.    Numerous other motions were filed by both parties.

24.    Final Hearing was conducted on August 25, 2015. Each party had filed a request for findings of fact and conclusions of law pursuant to Trial Rule 52(A). The Court granted the parties to and including September 25, 2015 to file their proposed findings of facts and conclusions of law.

## B.    Findings of Fact

25.    Father resides in Indianapolis with his mother, Donna Funk. Father currently is a student at Ivy Tech and works part time at the Ivy Tech library. Father began taking classes in the fall of 2014 and began working at the library in March 2015. Father is 38 years old and has a valid driver's license.

25.    Father and Donna reside in a three (3) bedroom home that is owned by Donna.

26.    Father has resided with Donna since Spring 2012.

27.    Father has no children other than [S.F.] and [C.F.]. Father last saw his children on a spring break visit in March, 2012, last had telephone communication with them in August 2012, and last had Skype communication with them in July/August 2012.

---

[1] There is no paragraph 20 in the trial court's decree of dissolution.

28. Since 2011 Father has made significant changes in his life. He has lost weight, approximately 100 pounds, and is healthier physically and mentally. In 2011 Father began receiving Social Security Disability. Father's disability ended in 2014 and he no longer receives any benefits.

29. Father suffered a traumatic brain injury (TBI) in a work-related accident in 2003. Father suffered many symptoms as a result of the injury, including some mental health issues.

30. Father sought treatment for his mental health issues at Centerstone and was under the care of his psychologist, Mr. Tabaki, and his psychiatrist, Dr. Leach. Father admits he was "pretty messed up" in 2012, but indicates he is now healthy and not experiencing any symptoms. Father completed his treatment with Centerstone at the end of 2012.

31. Father is no longer prescribed medication. He last took Celexa and Cymbalta in 2013.

32. Father has not had a seizure or experienced dizziness for a year and a half, each of which were side effects of his medication at the time. Father has been off of his seizure medications since March 2014. Father has been released by Dr. Glander and Dr. McMahon but would seek routine care and follow any recommendations of doctors.

33. Even though Mother has repeatedly accused Father of incidents of domestic violence during their marriage, the Court cannot conclude that Father did engage in domestic violence or that Father presents a current threat to the health, safety, and welfare of the minor children. Father's life appears to be structured and free from the chaos present during the marriage or at the initiation of this action.

34. Father's sister, Leslie Fergerson, lives near Father and had Father babysit her six (6) year old child on a consistent basis. Ms. Fergerson has no concerns about Father's conduct or behavior around her child and trusts Father to care for her child.

35.     Mother moved to Florida in early 2011 and has continued to reside in Florida with the minor children.  Mother's current living situation is unknown.  Mother's address is unknown and it is not known if Mother works or how Mother supports herself.

36.     Mother has refused to cooperate with the legal process. Mother last attended a hearing in this matter on July 27, 2012. There is an active writ of attachment against Mother in this case. In addition, on July 27, 2012, Mother was charged criminally with two (2) counts of interference with a custody order, as Class D Felonies, in the matter of State of Indiana v. Rahlina Funk, 55D03-1312-FD-1640.  A warrant was issued for the arrest of Mother.  The warrant remains unserved and Mother has failed to personally appear for any proceedings in the criminal matter. Mother remains a fugitive from justice.

37.     Mother was aware that the Florida Court relinquished and ceded jurisdiction to this Court as of September 26, 2013, yet Mother has continued to remain a fugitive from justice, has failed to appear at hearings, has failed to cooperate with discovery, and has failed to comply with this Court's orders.

38.     Mother's actions have prevented the Court from considering Mother's present circumstances in its ruling.  The Court must rely upon Mother's prior testimony at hearings and Father's testimony.

39.     Mother moved to Florida with [S.F.] in early 2011, while pregnant with [C.F.].  Upon moving to Florida Mother filed a civil action for an ex parte civil order of protection against Father, alleging prior domestic violence by Father.  Mother's request was granted and Father appeared at a subsequent hearing in Florida and then agreed to conditions and restrictions concerning custody and parenting time.

40.     After Mother received an adverse ruling in the Preliminary Order on March 7, 2012, Mother has continually engaged in a course of conduct to prevent Father from seeing his children. Mother failed to cooperate with any of the subsequent court orders providing Father parenting time or modifying custody to

Donna Funk. Mother foiled Donna Funk's attempts to locate her and the children in order to carry out the provisions of the Court's July 27, 2012 order. Donna Funk attempted to locate Mother and sought the assistance of local law enforcement and the FBI in Florida, all to no avail. Mother's actions have been intentional and the resulting estrangement of Father from his children has been detrimental to the emotional needs of the children. The Court must conclude that Mother's actions have been harmful to the minor children.

41. Mother has a history of mental illness in her family and a history of drug abuse. Mother frequently used marijuana up until the time she left for Florida. Mother has had a tumultuous relationship with her parents. At age 19 Mother attempted suicide and has been suicidal on and off during the parties' marriage.

42. During the marriage Father was the primary caregiver to [S.F.]. Mother did breastfeed [S.F.], but left all other primary care duties to Father. Mother worked from home in an online retail business and Father took care of [S.F.] and the household. Mother often acted irrationally and was abusive to Father. Mother often became upset and would act physically towards Father.

43. Mother continuously interfered with Father's Skype and telephone communications with the children before they were unilaterally discontinued by Mother in 2012.

44. When Father did last visit with the children in March 2012, Mother accused Father of inappropriate contact with the children and filed a report with DCS. Mother's allegations are unsubstantiated and denied by Father. Mother has failed to offer any evidence to support her allegations. Mother's uncorroborated allegations are not considered credible by this Court.

45. Father's spring visit with the children in 2012 went well and Father's bond with [S.F.] was quickly re-established. During the visit, Mother continued to attempt to interfere or cut the visit

short. Mother left with [S.F.] before Father had an opportunity to say good-bye to [S.F.]. Mother's actions were purposeful and part of her continued efforts to interfere with or eliminate Father's relationship with his children.

46. Mother failed to cooperate with Father's discovery requests. As a result, this Court issued its Order Re: Discovery Sanctions on August 14, 2015. The Court incorporates the findings and conclusions set forth in the August 14, 2015 order herein. In addition to an award of attorney's fees to Father, the Court also limited Mother's testimony and the testimony of witnesses at final hearing. Mother's failure to cooperate with discovery simply continues Mother's course of action to obstruct and interfere with this Court's ability to undertake its lawful duties.

47. The parties own no real property and all personal property has already been divided and distributed between the parties. There are no marital debts or liabilities. The marital estate has no value.

48. Father is currently employed with Ivy Tech earning [$]9.42 per hour. For the purposes of child support calculation, the Court will impute Father's income at minimum wage for a 40 hour work week, equally $290 per week. Mother's employment is unknown and the Court imputes minimum wage income for Mother, for a weekly income of $290. Beginning in October 2011, Mother began receiving child support payments that were directly withheld from Father's social security disability benefits. Mother erroneously received double payments, as both Indiana and Florida withheld payments. This Court had previously ordered Mother to terminate the Florida support orders to avoid the double payments. Mother knowingly and intentionally failed to do so. Mother received the sum of $7,488.00 in erroneous child support payments. Father is entitled to reimbursement from Mother for the overpayments.

50.    Father has incurred attorney's fees in the sum of $32,564.21 since the Preliminary Order was issued on March 7, 2012.

51.    Any finding of fact more appropriately deemed a conclusion of law shall be considered as such.

C.    Conclusions of Law

52.    This Court has subject matter jurisdiction over this matter.

53.    This Court has personal jurisdiction over the parties.

54.    Under the provisions of the Indiana Uniform Child Custody Jurisdiction Act (["the Act"]), Indiana is the "home state" of the children and the parties.  I.C. 31-21-2-8.  Mother, Father and [S.F.] (as [C.F.] was not yet born) all lived in Indiana for a least six (6) consecutive months before the initiation of this action.  Florida cannot meet the definition of "home state" as Father never resided in Florida and Mother and the children had not lived in Florida for 6 consecutive months prior to Mother filing her action in Florida.

55.    Pursuant to I.C. 31-21-5-1, Indiana is the only home state, and this Court had jurisdiction to make its rulings concerning child custody.  I.C. 31-21-5-l(a)(l).  Florida cannot meet the jurisdictional requirements of I.C. 31-21-5-1 and therefore cannot be said to have asserted jurisdiction over custody matters "substantially in conformity with this article", as required by I.C. 31-21-5-6.  Therefore, even if the Florida Court first issued rulings on custody matters, it did not have jurisdiction in substantial conformity with the ["the Act"] and therefore this Court did not have to cede to Florida's jurisdiction over custody matters.  Nevertheless, the Florida Court ultimately ceded and relinquished jurisdiction to this Court in its September 26, 2013 order.

56.    The Court shall determine custody and enter a custody and parenting time order in accordance with the best interests of the child, as established in I.C. §31-17-2-8. The Court shall consider all relevant factors, including but not limited to:

a. The age and sex of the child.

b. The wishes of the child's parents.

c. The interaction and interrelationship of the child with:

    i. The child's parents

    ii. The child's siblings

    iii. Any other person who may significantly affect the child's best interests

d. The child's adjustment to the child's:

    i. Home

    ii. School

    iii. Community

e. The mental and physical health of all individuals involved.

f. Evidence of a pattern of domestic or family violence by either parent.

57. Based upon the above factors, it is in the best interests of the minor children that father shall have sole legal and physical custody of the minor children.

58. Mother's actions in alienating the children from Father have had a detrimental impact on the children's mental health. Father is now physically and mentally healthy, stable, and best able to provide for the care and needs of the children. Father has the support of his mother, Donna Funk, and his sister. Mother's disregard of this Court's orders and unilateral action to terminate Father's relationship with the children demonstrate instability and irrational action. The Court can only conclude that Mother presents a threat to the emotional health of the children.

59. Based upon Mother's instability, her irrational actions, her status as a fugitive from justice, and the risk that Mother may abscond with the children, Mother's parenting time with the minor children shall be supervised. The specific terms and conditions of Mother's supervised parenting time shall be established once the children are returned to Father. Until such

time as the children are returned to Father, Mother's parenting time shall be suspended.

60.    Father's mother, Donna Funk, shall be the substitute custodian of the minor children pursuant to I.C. 31-17-2-8.

61.    Mother shall pay child support in the sum of $77.00 per week. The Court's calculation of child support pursuant to the attached Child Support Worksheet is incorporated herein. Uninsured medical expenses shall be paid pursuant to the 6% rule. Father shall pay the first $477 of uninsured medical expenses incurred on behalf of the minor children on an annual basis (to be prorated in this year), with Father paying 50% thereafter and Mother paying 50% thereafter. This child support order shall be effective upon the return of the children to Father.

62.    Each party shall retain any and all personal property in their possession. Each party shall pay any and all debts or liabilities incurred in their own name. There is no marital debt. There is no real property. The parties provided the Court with no values as to their property, and therefore the Court deems the division of property to be equal pursuant to I.C. 31-15-7-5.

63.    Mother is in contempt for her failure to abide by this Court's orders to return the children to Indiana, provide Father's parenting time, provide Father Skype and telephone communication, failure to provide a timely drug screen, failure to provide her address and/or whereabouts, and failure to terminate the Florida child support withholding order and reimburse Father for the overpayments. Based upon Mother's contempt, continued efforts to violate and avoid complying with this Court's orders, and discovery violations, Father is entitled to reimbursement of his attorney's fees in the sum of $32,564.21.

64.    Father is entitled to reimbursement from Mother for overpayments of child support in the sum of $7,488.00.

65.    The parties' marriage has suffered an irretrievable breakdown and should be dissolved.

66. Any conclusion of law more appropriately deemed a finding of fact shall be considered as such.

### D. Decree of Dissolution, Judgment and Order

67. The Court's findings of fact and conclusions of law herein are made on order of this Court.

68. The parties' marriage is hereby dissolved.

69. Father shall have sole legal and physical custody of the minor children.

70. Mother's parenting time shall be suspended until the children are returned to Father and then shall be supervised thereafter, with the specific terms to be determined by the Court once the children are returned.

71. Father's mother, Donna Funk, shall be the substitute custodian of the minor children pursuant to I.C. 31-17-2-8.

72. Mother shall pay child support in the sum of $77.00 per week. The Court's calculation of child support pursuant to the attached Child Support Worksheet is incorporated herein. Uninsured medical expenses shall be paid pursuant to the 6% rule. Father shall pay the first $477 of uninsured medical expenses incurred on behalf of the minor children on an annual basis (to be prorated in this year), with Father paying 50% thereafter and Mother paying 50% thereafter. This child support order shall be effective upon the return of the children to Father. Mother shall pay child support to the Morgan County Clerk and mail any payments to the INSCCU at P.O. Box 7130, Indianapolis, IN 46207.

73. Each party shall retain any and all personal property in their possession. Each party shall pay any and all debts or liabilities incurred in their own name.

74. A judgment in the sum of $7,488.00 is entered in favor of Father and against Mother for reimbursement of child support overpayments.

75.    A judgment in the sum of $32,564.21 is entered in favor of Father and against Mother for reimbursement of Father's attorney's fees.

78.[2]   The writ of attachment previously issued in this matter shall remain in full force and effect.

79.    The parties are ordered to perform all acts necessary to carry out and implement the terms of this Order.

Appellant's App. pp. 29-43 (footnotes omitted).

Additionally, the following facts specifically relate to Mother's attempts to have the issues of custody, support, and parenting time transferred to the Florida court system and her attempts to have the failure of those attempts overturned. On October 25, 2012, the trial court denied Mother's motion to cede the issues of custody, support, and parenting time to the Florida Court and certified the issue for interlocutory appeal. On April 5, 2013, in cause number 55A01-1303-DR-90, this court declined to accept jurisdiction of Mother's interlocutory appeal. Also on April 5, 2013, this court ruled that Mother had failed to show cause why her appeal in cause number 55A01-1209-DR-428 should not be dismissed, and ordered the appeal dismissed with prejudice. In that cause number, Mother was challenging the trial court's grant of a permanent injunction and writ of bodily attachment in favor of Father.

---

2  The trial court's order does not contain paragraphs designated 76 or 77.

[6] On September 27, 2013, Mother petitioned the Indiana Supreme Court for an emergency writ of mandamus. On October 1, 2013, the Indiana Supreme Court rejected Mother's request for a writ of mandamus :

> [Mother], by counsel, has filed a "Petition for Emergency Writ of Mandamus" ("Petition") and accompanying application papers, seeking relief under the Rules of Procedure for Original Actions. The Petition and other application papers are procedurally deficient in many respects. Nevertheless, the Court elects to look past these procedural defects and address the Petition on its merits.
>
> The Petition and other application papers fail to show that the [Morgan Superior Court 1, *et al.*] have exceeded their jurisdiction, that the writ has been sought expeditiously after the jurisdiction of the [Morgan Superior Court 1, *et al.*] became an issue, and/or that the remedy by appeal would be wholly inadequate. Ind. Original Action Rule 3(A). Because the Petition seeks an unquestionably inappropriate remedy under the rules and law governing writs of mandamus, this original action is DISMISSED.

Appellant's App. p. 178.

[7] Mother contends that the trial court erred in failing to give full faith and credit to the Florida Court's "initial custody order" before that court ceded jurisdiction to the trial court; in granting Donna custody of the Children in 2012; and in awarding sole custody of the Children to Father. Father argues that the question of jurisdiction over the custody issue has already been determined on the merits and may not now be reviewed, the trial court correctly determined that it has jurisdiction over the custody issue, and the trial court did not abuse its discretion in awarding sole custody of the Children to Father.

[8]     We choose to frame and address the issues as follows:

> I.      whether the res judicata and/or law-of-the-case doctrines bar consideration of the issue of jurisdiction;
>
> II.     whether the trial court erred in failing to give full faith and credit to the Florida Court's "initial custody order" before that court ceded jurisdiction to the trial court;
>
> III.    whether the trial court erred in granting Donna custody of the Children in 2012; and
>
> IV.     whether the trial court erred in awarding sole custody of the Children to Father.

# Discussion and Decision

## I. *Res Judicata*/Law of the Case

[9]     Father contends that reconsideration of the question of jurisdiction over the custody issue is barred by the doctrines of *res judicata* and/or law-of-the-case. Father essentially argues that the issue has already been decided on the merits by this court and the Indiana Supreme Court. Mother contends that the previous rulings were not on the merits and that consideration of the jurisdiction issue is not foreclosed.

> The doctrines of law-of-the-case and res judicata both operate to preclude litigation regarding matters that have already been litigated. *Mutchman v. Consolidation Coal Co.*, 666 N.E.2d 461, 464 (Ind. Ct. App. 1996). Specifically, the law-of-the-case doctrine provides that an appellate court's determination of a legal issue binds both the trial court and the court on appeal in any subsequent appeal involving the same case and substantially the same facts. *Cha v. Warnick*, 476 N.E.2d 109, 114 (Ind. 1985). The law-of-the-case doctrine stands for the proposition that:

> [F]acts established at one stage of a proceeding, which
> were part of an issue on which judgment was entered
> and appeal taken, are unalterably and finally
> established as part of the law of the case and may not
> be relitigated at a subsequent stage.

*Platt v. State*, 664 N.E.2d 357, 361 (Ind. Ct. App. 1996) (citations omitted). The application of this doctrine is discretionary, and despite its availability, courts retain the power to revisit their prior decisions or those of a *coordinate* court in any circumstance, "although as a rule courts should be loathe [sp.] to do so in the absence of extraordinary circumstances." *Id.* The term "coordinate," according to the American Heritage dictionary means "of equal rank, authority, or importance with another." Webster's Third New International Dictionary 502 (2002); *see also Turner v. State,* 751 N.E.2d 726, 729 (Ind. Ct. App. 2001).

Similarly, the doctrine of res judicata prevents the repetitious litigation of that which is essentially the same dispute. *Scott v. Scott*, 668 N.E.2d 691, 699 (Ind. Ct. App. 1996). The principle of res judicata is divided into two branches: claim preclusion and issue preclusion. *Eichenberger v. Eichenberger*, 743 N.E.2d 370, 374 (Ind. Ct. App. 2001). Claim preclusion applies where a final judgment on the merits has been rendered which acts as a complete bar to a subsequent action on the same issue or claim between those parties and their privies. *Id.* Issue preclusion, also referred to as collateral estoppel, bars the subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in a subsequent action. *Id.* Where issue preclusion or collateral estoppel applies, the previous judgment is conclusive only as to those issues actually litigated and determined therein. *Id.*

*In re Adoption of Baby W.*, 796 N.E.2d 364, 372-73 (Ind. Ct. App. 2003), *trans. denied*.

[10] Father correctly observes that "[i]t is generally recognized that a dismissal with prejudice is a dismissal on the merits." *MBNA Am. Bank, N.A. v. Kay*, 888 N.E.2d 288, 292 (Ind. Ct. App. 2008) (citing *Midway Ford Truck Center, Inc. v. Gilmore*, 415 N.E.2d 134, 136 (Ind. Ct. App. 1981)). "As such it is conclusive of the rights of the parties and res judicata as to the questions which might have been litigated." *Id.* (citing *Midway Ford Truck Center*, 415 N.E.2d at 136).

[11] Father points to this court's April 5, 2013, dismissal with prejudice of Mother's appeal from the trial court's denial of her motion to set aside Father's permanent injunction and the writ of bodily attachment. There is no indication, however, that Mother's motion had anything to do with the question of which state had jurisdiction over the custody issue. Consequently, this court's dismissal on April 5, 2013, has no effect on our ability to address the jurisdiction issue.

[12] Father also contends that the Indiana Supreme Court's denial of Mother's petition for a writ of mandamus precludes further consideration of the jurisdiction issue. We disagree. In denying Mother's petition, the Indiana Supreme Court concluded that "[b]ecause the Petition seeks an unquestionably inappropriate remedy under the rules and law governing writs of mandamus, this original action is DISMISSED." Appellant's App. p. 178. It is clear that the Indiana Supreme Court's dismissal was based on Mother's request for an inappropriate remedy and therefore did not touch on the merits of her underlying claim. Father has failed to establish that the doctrines of *res judicata* and/or law-of-the-case bar consideration of the jurisdiction issue. That said,

even if we had concluded that *res judicata* and/or law-of-the-case did apply to the question of jurisdiction, in the interests of leaving no doubt and finality, we would exercise our discretion to address the question on the merits. *In re Adoption of Baby W.*, 796 N.E.2d at 372-73.

## II. Jurisdiction Over Custody

[13] Mother contends that the trial court improperly failed to give full faith and credit to the Florida Court's rulings issued prior to September 26, 2013, the date on which the Florida Court ceded jurisdiction to the trial court pursuant to the Act. Mother also contends that the trial court violated her due process rights by failing to recognize the Florida Court's jurisdiction and granting physical custody of the Children to Donna on July 29, 2012. While Mother does not challenge the Florida Court's ultimate September 26, 2013, ceding of jurisdiction to the trial court, she argues that the trial court's improper exercise of jurisdiction put her at such a disadvantage that any hope for a fair final hearing was "obliterated." Appellant's Br. p. 32. Father contends that Indiana always had jurisdiction over the custody issue pursuant to the Act and therefore properly exercised and retained exclusive and continuing jurisdiction when it entered all of its orders. To the extent that Florida had jurisdiction over any aspect of this case, Father argues, it was emergency jurisdiction that was temporary in nature.

[14] The Act provides that an Indiana court has jurisdiction to make an initial custody determination if Indiana is the home state. Indiana Code section 31-21-5-1 provides, in part, as follows:

> (a) Except as otherwise provided in section 4 of this chapter, an Indiana court has jurisdiction to make an initial child custody determination only if one (1) of the following applies:
>
> (1) Indiana is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within six (6) months before the commencement of the proceeding, and the child is absent from Indiana but a parent or person acting as a parent continues to live in Indiana.
>
> (2) A court of another state does not have jurisdiction under subdivision (1) or a court of the home state of the child has declined to exercise jurisdiction on the ground that Indiana is the more appropriate forum under section 8 or 9 of this chapter, and:
>
>> (A) the child and the child's parents, or the child and at least one (1) parent or person acting as a parent, have a significant connection with Indiana other than mere physical presence; and
>>
>> (B) substantial evidence is available in Indiana concerning the child's care, protection, training, and personal relationships.
>
> (3) All courts having jurisdiction under subdivision (1) or (2) have declined to exercise jurisdiction on the ground that an Indiana court is the more appropriate forum to determine the custody of the child under section 8 or 9 of this chapter.
>
> (4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3).

Mother's argument is that the trial court exceeded its authority under the Act when it issued rulings regarding custody of the Children when the Florida Court had previously issued an emergency protective order. This argument

depends on Florida having "home state" status pursuant to Indiana Code section 32-21-5-1(a).

> "Home state" means the state in which a child lived with:
>
> > (1) a parent; or
> >
> > (2) a person acting as a parent;
>
> for at least six (6) consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six (6) months of age, the term means the state in which the child lived since birth with a parent or person acting as a parent.

Ind. Code §31-21-2-8. While this statute does not treat both of the Children the same, we ultimately reach the same result as to each, albeit by different routes.

## A. S.F.

As previously mentioned, S.F. was born on November 28, 2006. Even if we accept Mother's contention that she moved to Florida in late October of 2010 and not in early 2011 as the trial court found, S.F. and Mother had not been in Florida for the required six consecutive months when Mother filed her petition in Florida on March 7, 2011, or when Father filed his dissolution petition in the Indiana trial court on March 16. Therefore, Indiana is S.F.'s home state for purposes of the Act and Florida cannot be. Insofar as S.F. is concerned, Mother has established no error.

## B. C.F.

Also as previously mentioned, C.F. was born on June 9, 2011, in Florida, which was after Father commenced dissolution proceedings in Indiana on

March 16, 2011. Pursuant to the Act, then, Indiana is not C.F.'s home state, and Florida, upon C.F.'s birth, became C.F.'s home state. By this time, Mother had already petitioned for an injunction for protection in Florida which preceded Father's dissolution action. (Appellant's App. 100-10). This means that C.F. had no "home state" when Mother filed her petition in Florida, which dealt, in part, with custody.

[17] *Stewart v. Vulliet*, 888 N.E.2d 761 (Ind. 2008), presents similar facts and an analysis we find instructive. In that case, a pregnant mother filed dissolution and custody proceedings in Indiana, moved to Washington State, gave birth, and later attempted to have the proceedings transferred to Washington, asserting inconvenient forum. *Id*. at 763-64. The trial court ceded jurisdiction to Washington, and Father appealed. *Id*. at 764. The Indiana Supreme Court affirmed the judgment of the trial court, concluding that "[u]pon the birth of A.S., Washington became her home state." *Id*. at 765. "Thereafter, Washington had concurrent subject matter jurisdiction to determine A.S.'s custody." *Id*. at 765-66. Here, Florida properly exercised jurisdiction over C.F.'s custody because Florida is C.F.'s home state by birth, with Indiana having concurrent jurisdiction.

[18] Moreover, pursuant to the Act,

> (a) Except as otherwise provided in section 4 of this chapter, an Indiana court may not exercise its jurisdiction under this article if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction

substantially in conformity with this article, unless the proceeding:

> (1) has been terminated; or
>
> (2) is stayed by the court of the other state because an Indiana court is a more convenient forum under section 8 of this chapter.

So, at least as C.F. is concerned, it would appear that the trial court likely overstepped its bounds until jurisdiction was ceded to it in September of 2013.

[19] That said, we conclude that Mother had failed to show any prejudice in this regard. "It is well settled that when an error did not affect the substantial rights of the complaining party, such error will be considered harmless and not be grounds for reversal." *Cornett v. Cornett*, 412 N.E.2d 1232, 1236 (Ind. Ct. App. 1980) (citation omitted). Mother's claim of prejudice is essentially that she has been prevented from appearing at proceedings in Indiana because she is now the subject of a writ of bodily attachment and criminal charges for failing to abide by the trial court's allegedly illegal orders. As we have concluded, however, the trial court has always had full authority to act where S.F. is concerned. Even if one assumes that an acceptable response to court orders issued without proper authority is to ignore them and openly defy the trial court (as Mother has done consistently for several years), Mother has no such excuse where S.F. is concerned. Whatever prejudice Mother has experienced seems to have been caused entirely by her own actions. Mother has failed to establish that she was unfairly prejudiced by any order of the trial court, even if erroneous.

# III. Award of Custody to Donna on July 27, 2012

[20] Mother also contends that the trial court violated her due process rights by failing to recognize the Florida Court's jurisdiction and granting custody of the Children to Donna on July 29, 2012. As with Mother's previous argument, we fail to see how she was prejudiced by the trial court's award of custody to Donna, even if one assumes that the award was improper. In the end, Mother's consistent refusal to abide by the trial court's orders included this one; Donna has not, in fact, ever had custody of the Children because Mother has refused to deliver them as ordered.

[21] Moreover, the 2012 order granting custody to Donna has been superseded by the decree of dissolution, granting sole physical and legal custody to Father. At best, Mother's claim is moot. "An issue becomes moot when the parties lack a legally cognizable interest in the outcome of its resolution." *Bremen Pub. Sch. v. Varab*, 496 N.E.2d 125, 127 (Ind. Ct. App. 1986). "When the principle questions in issue have ceased to be matters of real controversy between the parties, when the court is unable to render effective relief upon an issue, and where absolutely no change in the status quo will result, the issues are deemed moot and the court will not retain jurisdiction to determine them." *Id*. The 2012 order granting custody to Donna, even if erroneous, is no longer a matter of real controversy between Mother and Father.

# II. Award of Custody to Father

Mother contends that the trial court abused its discretion in awarding physical and legal custody of the Children to Father. Specifically, Mother argues that the trial court's findings are not specific enough to allow meaningful review of its conclusion that Father is now physically and mentally healthy and stable.

> A child custody determination falls within the sound discretion of the trial court, and its determination will not be disturbed on appeal absent a showing of abuse of discretion. *In Re Guardianship of R.B.*, 619 N.E.2d 952, 955 (Ind. Ct. App. 1993). We are reluctant to reverse a trial court's determination concerning child custody unless the determination is clearly erroneous and contrary to the logic and effect of the evidence. *Id.* We do not reweigh evidence nor reassess witness credibility, and we consider only the evidence which supports the trial court's decision. *Wallin v. Wallin*, 668 N.E.2d 259, 261 (Ind. Ct. App. 1996).

*Spencer v. Spencer*, 684 N.E.2d 500, 501 (Ind. Ct. App. 1997).

We conclude that the record contains sufficient evidence to sustain the trial court's conclusion regarding Father's health. Father presented evidence that although he sought treatment for his mental health issues at Centerstone, he completed his treatment with Centerstone at the end of 2012. Father testified that he is no longer prescribed medication for mental health issues and last took Celexa and Cymbalta in 2013. Father testified that he has not had a seizure or experienced dizziness for a year and a half, each of which were side effects of his medication at the time, and that he has not taken seizure medications since March of 2014. Father testified that since 2011, he has lost 100 pounds and is

no longer receiving Social Security Disability benefits. Mother argues that the trial court should not have been able to rely solely on Father's "self-serving testimony regarding his mental health[,]" Appellant's Br. p. 39, and that it erred by not ordering a more comprehensive mental health evaluation. Mother, however, is simply asking us to reweigh the evidence, which we will not do. *See id.*

[24] Finally, Mother argues that the trial court abused its discretion in failing to give enough weight to what she refers to as "conclusive evidence of a pattern of Father committing domestic and family violence[.]" Appellant's Br. p. 40. Paragraph 33 of the trial court's dissolution order reads, in part, "Even though Mother has repeatedly accused Father of incidents of domestic violence during their marriage, the Court cannot conclude that Father did engage in domestic violence or that Father presents a current threat to the health, safety, and welfare of the minor children." Appellant's App. p. 34. Whatever evidence Mother presented concerning alleged domestic and family violence, the trial court determined was not credible. Again, Mother's argument is nothing more than an invitation to reweigh the evidence, which we will not do.

[25] The judgment of the trial court is affirmed.

Pyle, J., and Altice, J., concur.